51 So.2d 690

## TEN BALL NOVELTY & MANUFACTURING CO. et al. v. ALLEN.

### 6 Div. 142.

Supreme Court of Alabama.

April 5, 1951.

London, & Yancey and Geo. W. Yancey, all of Birmingham, for appellants.

Taylor, Higgins, Windham & Perdue, of Birmingham, for appellee.

STAKELY, Justice.

Mrs. Rosalie Allen (appellee) brought this suit against Ten Ball Novelty & Manufacturing Co. and against Allen's Record Bar (appellants) for personal injuries which she is alleged to have sustained while, as a customer, she was in the store operated by them. The suit is based on the alleged negligence of the defendants in their failure to provide her with a reasonably safe place to walk in their place of business. Both of the foregoing concerns are alleged to be partnerships composed of Nathan Al-

len, Clarence Allen, Louis Allen and Joseph Allen. Louis Allen is the husband of the plaintiff.

The defendants pleaded the general issue and contributory negligence in short by consent. There was verdict and judgment for the plaintiff. A motion to set aside the verdict and judgment and to grant the defendants a new trial was overruled by the court. Thereupon this appeal was taken.

In August 1949 four brothers, Clarence Allen, Nathan Allen, Louis Allen and Joseph Allen, were partners and the owners of the Ten Ball Novelty and Manufacturing Company and as such partners were engaged in operating the business known as Allen's Record Bar, located at the corner of 2nd Avenue and 18th Street North in the City of Birmingham, Alabama. In this place of business they offered goods for sale to the general public. The goods offered for sale included toys and hose for women. There were two entrances to the store for use by customers. One of these entrances was on Second Avenue and the other on 18th Street. The store fronted approximately 25 feet on Second Avenue. The store was arranged in two sections. In the front part of the store was the record bar and toys. In the back of the store was operated a juke box business. The general public was not invited into the part of the store where the juke boxes were stored and the plaintiff was not in this part of the store when she was injured.

The front part of the store was so arranged that it extended back about 50 feet from Second Avenue, from which point it then formed an L shape which extended to the 18th Street entrance. The plaintiff entered the store by way of the 18th Street entrance on the occasion of her alleged accident.

The store was equipped with asphalt tile floor laid in blocks. The company which had installed the floor had recommended that the floor be used a little while before it was waxed. The entire floor had been cleaned, waxed and highly polished several days before the plaintiff fell. This was the first time the floor had been waxed.

The plaintiff fell in the L shape portion of the store at a point about 10 or 15 feet from the 18th Street entrance to the store. In this L the defendants had children's sporting goods behind some showcases. In addition thereto they displayed some wheel goods (bicycles, wagons and tricycles) on the floor. These wheel goods had been moved when the floor was waxed and after the floor was waxed they had been placed back at this point on the floor. These wheel goods had remained there on the floor on display from the time that they had been placed back until the day the plaintiff fell.

The plaintiff fell in the store late in the afternoon. About noon that day or perhaps a little earlier the wheel goods had been removed from the floor where they had been displayed and were redisplayed in the window of the store. After the wheel goods were so moved, the place on the floor where they had been was not swept or cleaned up. The plaintiff slipped or fell on that part of the floor where the wheel goods had been displayed. The wheel goods had been displayed there for several days and trash had accumulated there. The defendants had opened some packages of dolls and some excelsior and waxed papers were on the floor there. The pieces of waxed paper were small, smaller than an inch in length and narrow like straw but some of them were 6 or 7 inches long. They were in plain view on the floor but a customer entering from the street could not see them until about five feet away on account of them being in the L. They could be seen as soon as one turned the L.

When the floor was waxed on the occasion prior to the accident self polishing wax was used. This was the first time the floor had been waxed after being laid. The floor was first cleaned, asphalt tile powder being used. It was then rubbed with steel wool and dried with rags. After it was dry, the wax was applied. George Walker applied the wax. He was recommended for this work by the company which installed the floor. According to him this was the first coat of wax to be applied to the floor and "a heavy coat, a real heavy coat" was put on. Also according to him this made the floor "real slick" when it dried. On a new floor when a heavy coat of wax is put on it

makes the floor "real slick." Asphalt tile when waxed is more slippery than rubber tile. In comparing rubber tile with asphalt tile the defendant's witness Morris Bloomenthal (the president of the company which installed the floor in the store of defendants) said: "Asphalt tile has little give and as a result when waxed it becomes somewhat slipperier than a rubber tile." He also said it was "right" that when an asphalt tile floor is waxed, it gets slick without buffing it with a machine. Morris Bloomenthal also testfied that if wheel goods such as bicycles and tricycles were stored over a portion of the floor after it had been waxed and it was dry and not used by customers walking over it, when the wheel goods were removed the floor where they had been would have retained a lot of its sheen. According to him when such a floor is not walked on it will retain its sheen, but when it is walked on grit and dust will give it a non-skid element and people won't slip so much.

The floor was well lighted by means of flourescent lights. Plaintiff entered the store by means of the regular 18th Street entrance provided for customers. She entered the store for the purpose of purchasing some hose. She saw Clarence Allen there in the store and walked towards him, as it was customary for members of the family to make purchases from one of the members of the firm. She was looking ahead and not down at her feet when she proceeded into the store. As she was walking along and as she was approaching the place where she later fell, she saw some paper or bits of dirt scattered generally over an area of five or six feet square there in the rear section of the store. This was the area from which the wheel goods had been removed earlier that day. As she proceeded towards her brother-in-law, she stepped over certain parts of strips of paper and dust but she could not say whether she had stepped into certain parts of it. She was walking normally. In order to have avoided all of the paper she would have had to tiptoe through it. When she was a few feet away from her brother-in-law her foot slipped out from under her and she fell to the floor. After she had fallen and as she was getting up she saw some shredded papers—excelsior type—some waxed paper and some newspaper there on the floor in the place where she had fallen. She had not seen that before she fell. She was wearing shoes with medium heels at the time. As a result of the fall she was bruised about the thigh and sustained a fractured left arm. She testified that the floor at the point where she slipped and fell was slick.

Assignments of error are based on the refusal of the court to give the affirmative charge for the defendants on their request, the ruling of the court in connection with other written charges requested by the defendants and the action of the court in overruling the motion for a new trial.

■ I. The duty of a storekeeper with respect to the condition of his place of business was stated by this court in Standard Oil Co. v. Gentry, 241 Ala. 62, 1 So.2d 29, 31. "Plaintiff was upon the premises to purchase gasoline, and had gone to the office for the purpose of signing a credit ticket. He was an invitee and it was the duty of defendants to exercise reasonable care to keep the premises in a reasonably safe condition. Defendants were no insurers of his safety, but were under a duty to observe reasonable care to see that the premises were reasonably safe for him as he came in to make his purchase. F. W. Woolworth v. Ney, 239 Ala. 233, 194 So. 667, and authorities therein cited."

While there was no proof that improper or inferior wax was applied to the floor, there was proof that the waxing job was done in such a way that a heavy coat of wax was applied with the result that the floor was real slick. The floor of the store was a new asphalt tile floor. A short time before the plaintiff slipped and fell the floor had been waxed for the first time. The plaintiff testified that when she fell the floor was slick at the place where she fell. The proof also showed that prior to the time that the floor had been waxed, some wheel goods (bicycles, tricycles, wagons, etc.) had been displayed there on the floor. In prep-

aration for waxing the floor these goods had been removed. The floor was then waxed and then the wheel goods had been placed back at this point. They had remained there on the floor until noon on the day plaintiff was injured.

Not only was the floor slippery by reason of a heavy coat of wax being applied but also there were shredded waxed papers on the floor. The papers together with the presence of the wheel goods had protected the floor from abrasive substances so that the floor had retained the high sheen and unusual slipperiness caused by the application of the heavy coat of wax. These papers were on the floor from around noon until late afternoon and according to the proof the defendants knew that they were there. The proof showed that a customer entering the store could not see the papers on the floor until within a few feet of them.

The slick condition of the floor and the presence of the paper on the floor was sufficient to present a jury question as to whether the defendants exercised reasonable care to have the floor in a reasonably safe condition for the use of their customers. F. W. Woolworth & Co. v. Erickson, 221 Ala. 5, 127 So. 534; Great Atlantic & Pacific Tea Co. v. Miller, 229 Ala. 313, 156 So. 834.

The present case is distinguishable on the facts from the recent decision by this court in the case of Britling Cafeteria Co. Inc., v. Naylor, 254 Ala. 84, 47 So.2d 187. In that case it was shown that there was no evidence that an employee of the storekeeper caused the green bean or other foreign matter to be on the floor at the place where the plaintiff had her accident. It was shown furthermore that there was no evidence that any employee of the storekeeper discovered foreign matter on the floor before the accident or was negligent in not doing so.

In the case at bar there is direct and positive proof that a heavy coat, a real heavy coat of wax was applied to the floor a short time before the plaintiff fell and there was direct and positive proof that there was waxed paper on the floor at the place where appellee fell, which had remained there from around noon until late in the afternoon. The proof showed that the defendants knew that this paper was there. The proof is positive and direct as to when the paper and the heavily waxed condition of the floor got there. The facts which were lacking in the case of Britling Cafeteria Co. v. Naylor, supra, could be found by the jury in the case at bar.

II. Furthermore it cannot be said as contended by appellants that the verdict was based on speculation and conjecture. In Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505, 509, this court said: "'* * * On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a judicial basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.'"

III. It is contended that the evidence shows that the plaintiff was guilty of contributory negligence as a matter of law. This is based on the idea that the plaintiff testified upon cross-examination to the effect that she knew the floor had been waxed and that she had observed some papers scattered about the floor as she approached the place where she fell. It is true that the plaintiff testified on cross-examination that she knew a new floor had been put on the store and that she had been in the store one time since the floor had been waxed. On that one occasion however she had walked through the toy department in the front part of the store while on this occasion when she fell, she was in the back area of the toy department. As she was approaching the place where she later fell she observed some packing papers and trash scattered about the floor and she stepped over certain parts of it but couldn't say whether or not she had stepped into certain parts of it.

422

It was not shown that the plaintiff knew of the slick condition of the floor in the area where she fell. She was walking along the passageway provided for the use of customers in a normal manner. She was looking ahead and not down at her feet. As she walked along she saw paper and trash on the floor over the general area ahead of her but she did not see what caused her to fall until after she had fallen and was getting up.

Assuming however that there was a conflict in her evidence on direct and cross-examination, yet this does not warrant the court to disregard her testimony. A question for the jury was presented. Alabama Power Co. v. Buck, 250 Ala. 618, 35 So.2d 355; Jones v. Bell, 201 Ala. 336, 77 So. 998; St. Paul Fire & Marine Ins. Co. of St. Paul Minn. v. Crump, 231 Ala. 127, 163 So. 651.

Under all the evidence it was a question for the jury as to whether or not the plaintiff used due diligence for her own safety. It appears to be conceded that the jury was fully instructed by the court as to the duty of the appellee. The question of proximate cause and the issue of plaintiff's alleged contributory negligence were properly submitted to the jury under the evidence. Great Atlantic & Pacific Tea Company v. Miller, 229 Ala. 313, 156 So. 834.

IV. We have examined the evidence carefully and do not think that we can say that the preponderance of the evidence is clearly against the verdict of the jury. The judge refused to disturb the verdict of the jury on that ground and we see no reason to disturb the ruling. Cobb v. Malone, 92 Ala. 630, 9 So. 738; Smith v. Smith, 254 Ala. 404, 48 So.2d 546.

Other assignments of error have received our careful consideration but we find no merit in them.

The judgment of the lower court must be affirmed.

Affirmed.

LIVINGSTON, C. J., and FOSTER and LAWSON, JJ., concur.