206 So.2d 590

**MAY–BILT, INC.**

v.

**Mrs. Harry O. DEESE et al.**

**6 Div. 283, 283–A.**

Supreme Court of Alabama.

Dec. 21, 1967.

Rehearing Denied Feb. 15, 1968.

**580**

Davies, Williams & Wallace, Birmingham, for appellant.

Higgins, Windham, Perdue & Johnson, Birmingham, for appellees.

GOODWYN, Justice.

Mrs. Harry O. Deese, appellee in 6 Div. 283, brought suit against May-Bilt, Inc., to recover damages for personal injuries suffered when she slipped and fell in May-Bilt's self-service grocery store while there as a customer. Mrs. Deese's husband, Harry O. Deese, appellee in 6 Div. 283–A, brought a derivative suit against the same defendant in the same court to recover damages for loss of "the society, consortium and services of his wife" and for expenses incurred by him, and which he will incur in the future, "for hospitalization, medical attention and services in and about the treatment" of his wife's injuries.

Mrs. Deese's complaint alleges that while she was in May-Bilt's store at its invitation, "and while walking along one of the aisles, passageways or floors of said store," she "slipped and fell to the floor and as a proximate consequence thereof she was injured and damaged * * * as a proximate consequence of the negligence of the defendant in this: Defendant negligently maintained said aisle,

passageway or floor at the place where" she "fell in an unsafe condition for the use of customers in said store." Mr. Deese's complaint contains substantially the same allegations.

Both cases were tried together before a jury. There was a separate verdict, and judgment thereon, in favor of each plaintiff. Defendant's motion for a new trial in each case was overruled. Defendant brings these appeals from the judgments rendered on the jury verdicts. By agreement, both cases were submitted here on one record.

The accident occurred on Saturday, about 2:30 P.M., in defendant's grocery store in Birmingham. Mrs. Deese was in the store as a customer, shopping for groceries. While walking down the aisle in the produce section, she slipped and fell to the floor. Before falling, she "had been all through the store shopping" and "was going to the produce counter, to the lettuce," when she fell, where lettuce and other items of produce were stored in open counters. To a question as to how far she "slid or slipped," she answered, "it felt like it was about four or five feet." She ended up under the cart being used by O. C. Powers, another customer. After falling, she saw pieces of a bean on the sole and heel of her shoe and a piece of a bean on the floor. She did not see "any foreign object or item on the floor" before she slipped. While still on the floor, she heard defendant's stockroom boy say: "Oh my Gosh, she has slipped and fell on a bean." The stockroom boy, Wayne McCary, was approximately five feet from Mrs. Deese when she fell, but did not see her fall.

Witness O. C. Powers was standing near Mrs. Deese but did not see her fall. He saw the part of the bean, described by him as a "string bean", on the floor and the part on the bottom of Mrs. Deese's shoe and described it as being "a green hard, hard bean, green," appearing "to have a fresh green color about it" and to have "the same appearance as those beans that were in the display bin." After the accident, he saw "a few more pieces of beans and vegetables up against the wall * * * on the floor." He further testified that there was nothing to obstruct the view of the scene by defendant's stockroom boy, who was standing "four feet" from Mrs. Deese, and that the weighing-station was "five or six feet from where I was stopped" but didn't know if the weighing-station girl "was there at that particular time the lady fell."

The manager of the store testified that the store had been swept thoroughly after its closing the previous Friday evening, that the entire floor is swept three or four times a day, and in between these sweepings, the produce department is swept every 15 to 30 minutes by produce department personnel. The manager stated that he had inspected the produce section approximately 30 minutes prior to the accident and that he saw nothing on the floor at that time.

The beans were displayed loosely in an open, refrigerated bin. In purchasing beans, customers make selections, then place them in paper bags and carry the bags several feet to a weighing station for weighing and pricing by one of defendant's employees.

The stockroom boy, Wayne McCary, was a high school student working part-time in the store. He testified that he recalled the accident but was unable to make a positive identification of Mrs. Deese at the trial when asked to do so by plaintiffs' attorney. He stated that he did not see the accident, that he was approximately five feet away and had his back to the scene when he heard a noise, turned around and saw the lady on the floor. After the accident, he saw the bean on the floor and described it as being fresh, green, and of the same color and freshness as the beans in the display bin. He picked up the bean and threw it away. He further testified that he did not see any other beans on the floor at that time, and that the floor in the produce section was swept many times during the day. The weighing-station girl did not testify.

■ There is no dispute that Mrs. Deese was in May-Bilt's store as its invitee. As invitor, May-Bilt owed to her, as invitee, the duty of exercising ordinary or reasonable care to keep its premises, at the place where Mrs. Deese was injured, in a reasonably safe condition. See: Southern Minerals Co. v. Barrett, 281 Ala. 76, 199 So.2d 87, 90–91; Great Atlantic & Pacific Tea Co. v. Bennett, 267 Ala. 538, 103 So.2d 177; S. H. Kress & Co. v. Thompson, 267 Ala. 566, 103 So.2d 171; Great Atlantic & Pacific Tea Co. v. Weems, 266 Ala. 415, 96 So.2d 741; Great Atlantic & Pacific Company v. Popkins, 260 Ala. 97, 99, 69 So.2d 274; Kittrell v. Alabama Power Co., 258 Ala 381, 63 So.2d 363; Ten Ball Novelty & Mfg. Co. v. Allen, 255 Ala. 418, 51 So.2d 690; Britling Cafeteria Co. v. Naylor, 254 Ala. 84, 47 So.2d 187; F. W. Woolworth Co. v. Ney, 239 Ala. 233, 194 So. 667.

It has been held also that, in cases of this type, the invitor is not an insurer of the safety of his invitees, that the principle of res ipsa loquitur is not applicable, and that no presumption of negligence arises from the mere fact of injury to an invitee. See: Great Atlantic & Pacific Tea Co. v. Bennett, 267 Ala. 538, 539, 103 So.2d 177, supra.

For a discussion of cases on the subject generally see: Annotation, "Liability of proprietor of store, office, or similar business premises for injury from fall due to presence of litter or debris on floor," 61 A. L.R.2d 6. See, also, 27 Ala. Lawyer 419 (Oct. 1966), "Wynn—Slip and Fall Cases in Alabama."

The three Great Alantic and Pacific Company cases v. Bennett (267 Ala. 103 So.2d 177), *Weems* (266 Ala. 415, 96 So.2d 741), and *Popkins* (260 Ala. 97, 69 So.2d 274), respectively, supra, were of the same type as those before us. There, as here, there was vegetable matter on the floor. In each instance it was held that the condition of the item involved was such as to support an inference that it had been on the floor sufficiently long to support a finding of the invitor's negligence in not discovering and removing it before the invitee's injury. There is no evidence in the case before us which would warrant a similar inference.

■ The Deeses argue that defendant's stockroom boy and weighing-station girl, who were standing near where Mrs. Deese fell, had an unobstructed view of the area and must have, or should have, seen the bean prior to Mrs. Deese's fall and were negligent in not removing it. However, there is no evidence that either employee saw the bean, nor is there evidence to support a reasonable inference that, in the exercise of ordinary or reasonable care, they should have seen it between the time it got on the floor and the time of the accident. There is no evidence as to how long the bean had been on the floor. For aught appearing, it might have been dropped there immediately before Mrs. Deese slipped on it. Mr. Powers' testimony that he saw vegetable matter on the floor next to the wall likewise cannot serve as the basis for an inference supporting a finding of negligence by May-Bilt. What has been said with respect to the offending bean is equally applicable to these items. The following from S. H. Kress & Co. v. Thompson, 267 Ala. 566, 569, 103 So.2d 171, 173, is applicable here:

"The rule is also well established that if there is evidence which tends to show that a foreign substance has been on the floor for a long while, it is proper for a jury to impute negligence to the defendant for not discovering and removing such foreign substance. Great Atlantic & Pacific Tea Co. v. Popkins, 260 Ala. 97, 69 So.2d 274; Rowe v. Alabama Power Co., 232 Ala. 257, 167 So. 324; Anjou v. Boston Elevated Railway Co., 208 Mass. 273, 94 N.E. 386. So to prove negligence on the part of the defendant it is necessary to prove that the foreign substance was on the floor a sufficient length of time to impute constructive notice to the defendant, or that he had actual notice, or that he was delinquent in not discovering and removing it. In

the absence of such proof, the plaintiff has not made out a prima facie case that the defendant was negligent in the maintenance of its floors. * * *

\*    \*    \*    \*    \*    \*

"It is not necessary, however, to enter direct evidence as to the length of time a foreign substance has remained on the floor; it is permissible to allow a jury to infer the length of time from the nature and condition of the foreign substance. In Great Atlantic & Pacific Tea Co. v. Popkins, supra, wherein the plaintiff slipped on a lettuce leaf, this court stated [260 Ala. 97, 69 So.2d 276]:

"'\* \* \* The lettuce leaf was shown to have been dirty, crumpled and mashed. The jury could find from that condition that it had been on the floor long enough to have raised a duty on defendant to discover and remove it. \* \* \*'

"In the instant case, there was no evidence introduced as to how long the foreign substance upon which Mrs. Thompson slipped was on the floor. For aught that appears from the evidence introduced, it might have been dropped upon the floor a minute before the appellee slipped upon it. No evidence was introduced to the effect that the appellant or any agent of the appellant knew the substance was on the floor. \* \* \*"

We are at the conclusion that the plaintiffs did not meet the burden on them of establishing the alleged negligence of defendant May-Bilt. Therefore, the affirmative charge, with hypothesis, requested by May-Bilt in each case should have been given, thereby requiring a reversal of the judgment appealed from in each case.

Reversed and remanded.

LAWSON, COLEMAN and HARWOOD, JJ., concur.