255 So.2d 586

**DELCHAMPS, INCORPORATED**

v.

**Claudia STEWART.**

**1 Div. 18.**

Court of Civil Appeals of Alabama.

Oct. 20, 1971.

Rehearing Denied Nov. 17, 1971.

Cunningham, Bounds & Byrd, Mobile, for appellee.

Foreman, Brown & Hudgens, and Peter V. Sintz, Mobile, for appellant.

WRIGHT, Judge.

Appellee, plaintiff below, Claudia Stewart, was a customer in the supermarket of appellant, Delchamps, Inc., at approximately 4:00 p. m. on March 26, 1968. While shopping she slipped on a green onion leaf, fell to the floor and was injured. The extent of her injuries is not involved in

this appeal. Suit was brought by appellee on October 15, 1968. The complaint consisting of one count, charged appellant with negligently maintaining the floor of its store which negligence proximately resulted in the injury to appellee. Upon trial by jury, verdict and judgment was entered against appellant in the amount of $7,500. Motion for new trial was denied and appellant appealed.

Appellant assigns as error the refusal by the trial court to give to the jury its written request for the affirmative charge.

The facts of this case bring it within the type of case which has come to be designated by the bar as a "slip and fall" case. An increasing number of such cases have appeared in recent years in the appellate reports of this State. The basis of the appeal in these cases has almost invariably been the refusal or giving of the affirmative charge. This of course has presented the matter of defining the duty owed by a storekeeper to its business invitees and the evidence required of the plaintiff to prove a prima facie case as to a breach of such duty.

The duty of the storekeeper has been clearly defined in each of such cases and we repeat it here.

■ There is a duty upon all storekeepers to exercise reasonable care in providing and maintaining reasonably safe premises for the use of their customers. The storekeeper is not an insurer of the customers' safety while on the premises, but is liable for injury only in the event he negligently fails to use reasonable care in maintaining his premises in a reasonably safe condition. S. H. Kress & Co. v. Thompson, 267 Ala. 566, 103 So.2d 171; F. W. Woolworth v. Ney, 239 Ala. 233, 194 So. 667; May-Bilt, Inc. v. Deese, 281 Ala. 579, 206 So.2d 590; Great Atlantic & Pacific Tea Co. v. Bennett, 267 Ala. 538, 103 So.2d 177; Great Atlantic & Pacific Tea Co. v. Weems, 266 Ala. 415, 96 So.2d 741; Great Atlantic & Pacific Tea Co. v. Popkins, 260 Ala. 97, 69 So.2d 274;

Standard Oil Co. v. Gentry, 241 Ala. 62, 1 So.2d 29; Gulas v. Ratliff, 283 Ala. 299, 216 So.2d 278; Foodtown Stores, Inc. v. Patterson, 282 Ala. 477, 213 So.2d 211.

■ The burden of proving a breach of duty by the storekeeper is upon the plaintiff as in all negligence cases. The doctrine of res ipsa loquitur does not apply in such cases. It was stated in the case of F. W. Woolworth Co. v. Ney, supra, and quoted thereform in S. H. Kress & Co. v. Thompson, supra, as follows:

" 'No presumption of negligence arises from the mere fact of injury to a customer. Upon the plaintiff rests primarily the burden of showing that the injury was proximately caused by the negligence of the storekeeper, or one of its servants or employees. Actual or constructive notice of the presence of the offending instrumentality must be proven before the proprietor can be held responsible for the injury. * * *' "

It was further stated in the "Kress" case as follows:

"So to prove negligence on the part of the defendant it is necessary to prove that the foreign substance was on the floor a sufficient length of time to impute constructive notice to the defendant, or that he had actual notice, or that he was delinquent in not discovering and removing it. In the absence of such proof, the plaintiff has not made out a prima facie case that the defendant was negligent in the maintenance of its floors. * * *

"It is not necessary, however, to enter direct evidence as to the length of time a foreign substance has remained on the floor; it is permissible to allow a jury to infer the length of time from the nature and condition of the foreign substance. * * *"

The above quoted statements may be said to have evolved into a rule in "slip and fall" cases involving foreign substances on the floors of storekeepers. Cases report-

ed in this State have largely involved slipping on vegetable matter, such as lettuce leaves, beans, and in the instant case a green onion leaf. The two most recent such cases are May-Bilt, Inc. v. Deese, supra, and Foodtown Stores, Inc. v. Patterson, supra. Coincidently, both of these cases involved slipping upon a green bean under similar conditions and circumstances. *May-Bilt* appears to have exhaustively researched and considered every "slip and fall" case decided by the appellate courts of this State, and in addition thereto various articles and annotations. (61 A.L.R.2d 6, 27 Ala.Lawyer 419 "Wynn—Slip and Fall Cases in Alabama.") After such research and consideration the Supreme Court in *May-Bilt* concluded the plaintiffs had failed to meet their burden of proof and that the affirmative charge with hypothesis should have been given as requested by May-Bilt. The judgment of the trial court was reversed.

In *May-Bilt* the court said that the imputation or inference of negligence allowed in the three *Great Atlantic & Pacific Tea Co.* cases (*Bennett*, supra, *Weems*, supra, *Popkins*, supra), because of the dirty, mashed and crumpled condition of the offending vegetable matter was not applicable because the offending bean was shown to be green and not shown to have been dirty, mashed and crumpled. In response to further contentions as to the state of the evidence in *May-Bilt* the court said as follows:

"The Deeses argue that defendant's stockroom boy and weighing-station girl, who were standing near where Mrs. Deese fell, had an unobstructed view of the area and must have, or should have, seen the bean prior to Mrs. Deese's fall and were negligent in not removing it. However, there is no evidence that either employee saw the bean, nor is there evidence to support a reasonable inference that, in the exercise of ordinary or reasonable care, they should have seen it between the time it got on the floor and the time of the accident. There

is no evidence as to how long the bean had been on the floor. For aught appearing, it might have been dropped there immediately before Mrs. Deese slipped on it. \* \* \*"

As previously stated herein, under an almost identical factual situation as in *May-Bilt*, the Supreme Court in *Foodtown Stores* affirmed a judgment in the lower court for plaintiff and stated the affirmative charge was correctly refused under the "Scintilla Rule." This is noteworthy because the decision in *Foodtown Stores* quoted extensively from *May-Bilt*. However, the court expressly distinguished from *May-Bilt* and *Kress* on the facts. It was stated in *Foodtown Stores* as follows:

"We do not think that what we define as a 'stop watch' rule should be adopted by the court in actions such as these by holding, as a matter of law, any particular time shall govern as to whether the sweeping, cleaning, or lack of sweeping and cleaning is negligence. Each case should be decided upon its specific facts. We hold the rule to be that no absolute or positive invariable rule can be announced that can be applied to each case, and which will correctly define the duties of store keepers (invitors) in all cases, or the duties of the invitees (customers). The duties and liability of the invitor (store keeper), and the duties, risks and rights of the invitees (customers) must of necessity depend upon the circumstances of each particular case. \* \* \*"

We subscribe to the rule as stated in this quotation.

In the instant case we can find no evidence to support an inference of negligence because of the condition of the onion leaf as described by the witnesses. Plaintiff and her sister each described the leaf as green and undamaged except for the end upon which plaintiff had slipped and fallen. There is no reasonable inference to be obtained from the evidence other than the mashed and dirty portion

of the leaf was due to it having been stepped and slid upon by plaintiff as she fell. Thus, the factual inference that the leaf had been on the floor for such a length of time as to place a duty upon defendant to discover and remove it is not present.

Without exception, so far as the recital of evidence in each indicates, the falls in every case upon vegetable matter cited herein, occurred at or in the immediate vicinity of the vegetable counter. Perhaps it could be contended, as was indicated in *Foodtown*, the storekeeper should exercise more care or be more diligent in inspecting and cleaning in the area of the vegetable sales counter when it is known, even judicially according to *Foodtown*, that customers are likely to drop or knock vegetables to the floor. If such contention could be made, it does not apply to this case, as the evidence was undisputed the plaintiff slipped and fell on the onion leaf two aisles away from the vegetable counter.

In this case there was evidence that the assistant manager had passed up the aisle some five or ten minutes prior to plaintiff falling and did not see the leaf on the floor, though it was his custom when moving about the store to observe the stock and the floors.

It was shown that the porter swept the floors three times daily. It had been some three to four hours since he had last swept. Under the "stop watch" rule without some evidence that the floor was otherwise dirty or littered, the time since the last sweeping raises no inference of negligence or indicates lack of reasonable care. From aught that appears from the evidence, three sweepings per day was more than reasonable. The presence of a green onion leaf on the floor does not of itself show lack of reasonable care. The onion leaf could have just recently fallen from a customer's cart. Had the floor been swept two hours, one hour, one-half hour or fifteen minutes before the fall, and yet the leaf been dropped only ten minutes before, it would not have prevented the fall and plaintiff's injury. The mere fact that there was an onion leaf on the floor and that the plaintiff slipped and fell upon it, without more, raises no inference or scintilla of negligence. To hold otherwise would require the storekeeper to be an insurer of the safety of its customers.

Appellee has listed in brief a list of 20 items of evidence from which she contends the jury could have determined the appellant negligent and that such negligence proximately caused her injuries. We list them and respond.

1. "The onion was mashed and dirty on one end." The witness clearly stated the mashed and dirty end was "like you had slid on it."

2. "There was a mark on the floor right where the appellee fell."

The mark was obviously from the slipping and falling. It proved nothing except plaintiff fell after slipping on the onion leaf. This was undisputed.

3. Maudie Williams (plaintiff's sister) saw her fall and stated she slipped on the onion. No dispute.

4. There were no other customers in the aisle at the time of the fall to have dropped the onion, giving the jury the basis for concluding it had been there for some time.—What time?

5. There were two employees of the appellant right at the end of the aisle where appelleee fell. These employees were putting up stock.—What inference does their presence raise of negligence? As was said in *May-Bilt*, there is no evidence the employees saw the onion. Nor is there any evidence to support a reasonable inference that in the exercise of reasonable care, they should have seen it, since there is no evidence as to how long it had been there.

6. The floor was supposed to be swept three times a day and more if needed.— The floor had been swept at least twice. There was nothing shown by the evidence, other than at the time plaintiff fell there was a single onion leaf on the floor, that

appellants had notice, actual or constructive, that more sweeping was needed.

7, 8 and 9 refer to the testimony that another sweeping was due at about the time of the fall.—We see no inference of negligence in that fact alone.

10, 11, 12 and 13. Prior to the fall the assistant manager had seen people up and down the aisle in which appellee fell and he knew that an onion could get from the produce department over where appellee fell by falling out of customers carts or kids throwing it out and that such occasionally happened.—Does such knowledge require someone to follow customers over the store to insure that the floor is always clear of matter which might fall from carts or be thrown by kids? Does a failure to do so infer lack of reasonable care? We think not.

14. The porter was charged with the responsibility to inspect as well as sweep and clean. The jury could have concluded he was not even in the store at the time.—Assuming the possibility of such conclusion, his absence from the store could present no inference of negligence unless his continual presence is a requirement of reasonable care. There is nothing in the evidence to so indicate.

15. The assistant manager did not know whether the porter had checked at any time during the day to see whether the floor was clean.—His lack of knowledge of the porter's actions was no reasonable inference that the porter had not performed his duties.

16, 17, 18 and 19 are repetitions and add nothing.

20. There was a red carpet on the floor in the produce area and the aisle where plaintiff fell was tile.—This indicates only that appellant had recognized a greater danger of slipping on the floor of the produce department and had attempted to minimize or lessen the danger in that area. There was no evidence presenting an inference that failure to red carpet all the store was a lack of reasonable care.

Our careful consideration of the evidence and the reasonable inferences in favor of plaintiff reasonably possible to be drawn therefrom, convinces us that plaintiff failed to make out a prima facie case that defendant was negligent in maintaining its floors. The appellant was due the affirmative charge.

Appellant assigns as error the giving of the following written charge at the request of the plaintiff.

"1. I charge the jury that if you are reasonably satisfied from the evidence in this case that the defendant negligently injured Claudia Stewart in such a manner as to aggravate a pre-existing condition, the defendant is liable for all injuries proximately resulting therefrom."

Charge 1 is contended to have been erroneously given because it omits any mention of the defense of contributory negligence. Appellant does not dispute that the charge is a correct statement of law so far as it goes, but that it is abstract and misleading as a result of its omissions. It is the law of this State that the giving of an abstract, misleading or incomplete written charge which correctly states a principle of law so far as it goes, and which may be made complete by explanatory charge, is not reversible error unless it is shown that such charge did in fact prejudicially mislead the jury. Knabe v. State, 285 Ala. 321, 231 So.2d 887; Roan v. Smith, 272 Ala. 538, 133 So.2d 224; Swindall v. Speigner, 283 Ala. 84, 214 So.2d 436; Jacks v. City of Birmingham, 268 Ala. 138, 105 So. 2d 121.

We find no indication that the omission of reference to defendants' plea of contributory negligence from Charge 1 resulted in prejudice to the defendant. Such omission was fully and adequately supplied by defendants' Charges 5, 6, 15 and 36, as well as by the excellent oral charge by the court.

The above rule applies equally to appellants' Assignments of Error 18 and 19. As-

signment of Error 25 relating to denial of the motion for new trial is pretermitted by our decision as to Assignments of Error 6 and 7.

For error in refusing appellants' request for the affirmative charge the judgment below is reversed.

Reversed and remanded.

## ON REHEARING

On rehearing—application denied—opinion extended.

The writer of the original opinion in this case had mental reservations about including a discussion of the enumerated points of evidence set out in appellee's brief. These points of evidence were insisted by appellee to be individually and collectively sufficient to present the scintilla of negligence for submission of the case to the jury. Our reservations were based upon the possibility, nay probability, that any response would be considered as an adversary approach. Appellee's application and brief on rehearing convinces us that in future decisions we should have no reservation about heeding our initial mental reservations.

There was no intent or purpose in our response to appellee's contentions as to the evidence to become involved in an adversary controversy. We do not think our response did so. We merely attempted to point out that the conclusions or inference drawn by appellee from the portions of the evidence set out were not reasonable, and as a matter of law in our opinion, did not comprise a scintilla of negligence by appellant when considered individually or collectively. The basis of our opinion was the criteria of required proof as defined, refined, and developed in the long line of prior decisions of our Supreme Court in similar cases.

Though charged by appellee in brief with failure to do so, we assure appellee that in this case, as in all cases of appeal from the refusal of the affirmative charge requested by defendant, we viewed the evidence in its entirety in a light most favorable to plaintiff. It was only after so doing that we concluded the evidence, with all reasonable inferences possible to be drawn therefrom, was insufficient for the consideration of the jury. Such question is a matter of law. Having reached such conclusion the presumptions as to the verity of the jury's verdict and the correctness of the overruling of the motion for new trial have no application.

We examined the trial court's denial of the affirmative charge with all presumption of correctness and found it to be in error. Application for rehearing overruled.

Application for rehearing overruled—opinion extended.