349 So.2d 37 (1977)
WINN-DIXIE, etc., et al.
v.
Garner GODWIN.
SC 2092.
Supreme Court of Alabama.
August 26, 1977.
Peter V. Sintz, of Sintz, Pike, Campbell & Duke, Mobile, for appellants.
Taylor D. Wilkins, of Wilkins & Bankester, Bay Minette, for appellee.
SHORES, Justice.
Mrs. Garner Godwin (appellee) filed suit against Winn-Dixie, Inc. and Kwik-Check Supermarkets, Inc. (appellants) claiming damages of $15,000 as the result of a fall in a Winn-Dixie store located in Foley, Alabama. At the close of the evidence, appellants moved for a directed verdict which was denied. The jury returned a verdict for the appellee and a judgment in the amount of $15,000. Appellants then filed a motion for a judgment n. o. v. or for a new trial. This motion in the alternative was denied. Appellants bring this appeal alleging error by the trial court in its refusal to order a directed verdict and in its denial of the alternative motion for judgment n.o.v. or new trial.
The appellee, age 71, went into the Foley Winn-Dixie store the morning of March 5, 1975. After shopping, Mrs. Godwin paid for her purchases and was leaving the store when she slipped and fell, landing on her right side. She was helped up by an employee of the store and by an elderly man. Upon being seated, Mrs. Godwin remarked that there was a heel mark on the floor where she fell and also that there appeared to be a build-up of floor wax on that part of the floor. Mrs. Godwin was wearing a lowheeled patent leather shoe with a rubber sole. When Mrs. Godwin's husband was called to the scene, he also observed the heel mark. Both Mrs. Godwin and her husband testified to the effect that "there was too much wax" on the floor, "that there appeared to be a wax build-up because of some discoloration," that the floor looked "real bright," and that it looked "thick and shiny".
The store manager was with Mrs. Godwin when she made the observation that there was too much wax on the floor and when *38 she pointed out the heel mark. But neither the manager nor any of the store employees commented on the condition of the floor to Mrs. Godwin on the day of the accident.
The floor of this particular store had been waxed the night before the accident by a Mr. Weeks who had been waxing floors for several Winn-Dixie stores in the area for four years as a part-time job. Mr. Weeks testified that on the night before the accident he and two helpers stripped the old wax off the floor and then applied two coats of self-polishing wax. Weeks testified that he performed this job in approximately four hours.
The testimony of the store manager and a store employee was that there was no wax build-up on the floor on the day in question, that the floor was not slick, and that to their knowledge no one other than Mrs. Godwin slipped on the floor that day.
The appellants present two major issues for this court's consideration, the first issue being whether there was sufficient evidence of a lack of due care on the part of the appellants in maintaining the floor to allow the case to go to the jury. The second issue raised is whether the judgment rendered by the jury is excessive.
There is no dispute between the parties that Mrs. Godwin was in the Winn-Dixie store as an invitee and that Winn-Dixie owed her the duty of exercising ordinary or reasonable care to keep the premises in a reasonably safe condition. May-Bilt, Inc. v. Deese, 281 Ala. 579, 206 So.2d 590 (1967); Great Atlantic & Pacific Tea Co. v. Bennett, 267 Ala. 538, 103 So.2d 177 (1958); Ten Ball Novelty & Manufacturing Co. v. Allen, 255 Ala. 418, 51 So.2d 690 (1951).
Appellants argue that they were entitled to a directed verdict because of a failure of proof of negligence on their part.
We disagree. To the contrary, the plaintiff put on sufficient evidence to permit the jury to pass on the issues of negligence and proximate cause.
When she entered the store, Mrs. Godwin remarked to her grandson: "Don't run on this floor, it is highly waxed and you might fall and break an arm or leg."
After her fall, Mrs. Godwin said that she did not see anything on the floor, but it was waxed too heavily. According to her, all she knew was that she slipped on a waxed floor.
This court has said in cases of this kind:
"There are many factual matters that are involved in cases such as thisas examples: How old was the plaintiff? Her general health at the time of the accident? How much did she weigh? Was she wearing high or low heels? Was she under medication at the time that could have caused her to lose her equilibrium? Did she wear glasses? Bifocals? How long since they were changed or corrected? What was the condition of the floor as to color? Was it a slippery floor, or did it have a non-slippery surface? Countless other matters are important and usually present in such a case as this. All of such, however, are factual and for the jury to consider in each case, after proper instructions from the court.. . ." (Emphasis Added) Foodtown Stores, Inc. v. Patterson, 282 Ala. 477, 482, 213 So.2d 211, 215 (1968).
Several of these factual issues are, in fact, involved in this case, just as the court recognized as normal in such cases. But the point is: They are factual matters and, therefore, properly left to the jury for a determination of whether the defendant is negligent, and whether such negligence, if any, proximately caused the plaintiff's injury. There was evidence produced which entitled the jury to pass on the plaintiff's theory of the case.
Ten Ball Novelty & Manufacturing Co. v. Allen, supra, involved a female customer in a store who slipped and fell on a floor which was heavily waxed and had bits of paper strown over the floor. There, the plaintiff testified that she saw the bits of paper on the floor and knew that the floor was recently waxed. She was walking where she was supposed to walk and did not know what caused her to fall until after she had done so and was getting up, but the floor *39 where she fell was slick. In that case, Justice Stakely, writing for the court, said:
"Not only was the floor slippery by reason of a heavy coat of wax being applied but also there were shredded waxed papers on the floor. The papers together with the presence of the wheel goods [which had been displayed in this area until noon on the day the plaintiff was injured] had protected the floor from abrasive substances so that the floor had retained the high sheen and unusual slipperiness caused by the application of the heavy coat of wax. . . .
"The slick condition of the floor and the presence of the paper on the floor was sufficient to present a jury question as to whether the defendants exercised reasonable care to have the floor in a reasonably safe condition for the use of their customers. . . ." (255 Ala. at 421, 51 So.2d at 693)
In Ten Ball, supra, the theory of the plaintiff's case was that she fell because the floor was too heavily waxed. The presence of the bits of paper were not attributed to her fall by either side. There should be no distinction between the present case and that one.
We are not persuaded that the verdict is excessive. Although Mrs. Godwin did not receive any broken bones as a result of the fall, there was medical testimony that the fall aggravated a pre-existing arthritic condition in the 71-year-old woman; she suffered prolonged pain and was impaired in her ability to perform her usual activities. Her medical expenses were estimated at $250. We cannot conclude, under these facts, that the verdict was excessive.
AFFIRMED.
BLOODWORTH, MADDOX, FAULKNER, JONES, EMBRY and BEATTY, JJ., concur.
TORBERT, C. J., dissents.
TORBERT, Chief Justice (dissenting):
I respectfully dissent. I am unpersuaded that the appellee in this case provided sufficient evidence to permit the jury to make a determination on the issues of negligence and proximate cause.
The appellee refers the court to the following testimony of Mr. Weeks, the man who applied wax to the floor the night before:
"Q. Leonard, what time did you all start working on the floor that night?
"A. We started at 7:30 p.m. after the store was closed and everybody was out of the store.
"Q. What time did you all get the other wax up off the floor?
"A. Took us about two hours to get it up.
"Q. About two hours?
"A. Yes.
"Q. And then you started putting this down?
"A. About an hour after the floor dried, we started putting the other down.
"Q. Are you testifying from your memory as to what you did that night, or is this just the general procedure, and you feel like that's what you did?
"A. I am testifying what we done that night.
"Q. What time did you all get through waxing the floor?
"A. It was around about 11:30 p.m.
"Q. How long does it take you to put a coat of wax down?
"A. You can put a coat of wax down in an hour.
"Q. How many coats of wax did you put down that night?
"A. Two.
"Q. How long did you wait in between?
"A. We waited an hour.
"Q. An hour in between the two coats and it took you an hour for each coat?
"A. Yes, sir.
"Q. Sometime you have to wait a little longer than others, don't you?
"A. If it ain't dry enough, you can't put the second coat down.
"Q. And that's the key as to whether or not you have a real good wax job, isn't *40 it? You can't have any moisture under the waxthe second or the first coat?
"A. Right. The first coat's got to be thoroughly dry.
"Q. Did you inspect this area where this woman fell?
"A. The front was all dry.
"Q. You went out and looked at it?
"A. Yes, sir, went over the whole store to see if it was dry.
"Q. You recall doing that?
"A. Yes.
"Q. Do you recall going to that checkout counter where she was and checking to see if it was dry?
"A. We went out in front and walked up in the front of the cash register and all, down from the office and back to the back.
"Q. What time did you leave the store that night? Did you say around 11:00 p.m.?
"A. We got throughsee we had to wait until the manager came and let us out. Sometimes it takes fifteen minutes to half hour.
"Q. Do you recall what time it was? I'm not pinning you to the exact minute.
"A. I would say roughly 11:30 p.m."
The appellee places great emphasis on Mr. Weeks' statement that the first coat must be dry before the second coat is applied in order to have a "real good wax job." According to appellee's calculations, Mr. Weeks could not have properly completed the job that night before 2:00 a.m. the next morning; i. e., it would take six and a half hours to finish waxing the floor properly calculated in the following manner: 2 hours to strip the floor of old wax; 1 hour wait; 1 hour to put down the first coat; 1 hour to allow the wax to dry; 1 hour to put down the second coat; 1 hour to allow the wax to dry; 30 minutes checking the floor and waiting for the store manager to arrive to let them out of the building.
Based on Mr. Weeks' testimony and the appellee's time calculations, the appellee contends that the jury was free to infer that proper care was not used in waxing the floor and that as a proximate result of this negligence the appellee sustained injury.
This construction of the evidence should not stand. In considering the propriety of granting a directed verdict, we must view the evidence in the light most favorable to the appellee. However, there remains a fatal flaw in the appellee's case, that flaw being a complete failure to show proximate cause.
There was no evidence produced by the appellee that the application of the wax in the manner testified to would create a slippery walking surface. The only evidence touching on proximate cause was the testimony by Mr. Weeks, quoted and emphasized above, that the first coat of wax must be dry before the second coat is applied in order to have a "real good wax job." There was no evidence presented to show what is meant by a "real good wax job" and, specifically, there was no evidence presented that the premature application of the second coat of wax would create a slippery surface which could constitute an unsafe condition.
The testimony of Mrs. Godwin and her husband that the floor looked like it had too much wax, that there was a wax buildup, that the floor was shiny, and that there was a heel mark where she fell was not supported by any evidence that these conditions constituted an unsafe condition which was the proximate cause of her injuries. Nor was any evidence presented which would tend to prove that the way in which Mr. Weeks applied the wax created an unsafe condition.
One of the cases relied on by the majority is Ten Ball Novelty & Manufacturing Co. v. Allen, 255 Ala. 418, 51 So.2d 690 (1951), but in that case there was testimony "that a heavy coat, a real heavy coat" of wax was put on the floor and that it made the floor "real slick" when it dried. There also was evidence that on a new floor when a heavy wax was put on, it made the floor "real slick." In that case, the plaintiff testified that when she fell the floor was real slick at the place where she fell. But in the instant case we have no such evidence.
*41 Evidence of a remark by appellee to her grandson: "Don't run on this floor, it is highly waxed and you might fall and break an arm or leg" is not sufficient evidence from which the jury could infer that the floor was slippery or unsafe.
If we assume that there was negligence in the application of the wax, there was no actionable negligence shown because of the failure of the appellee to show proximate cause. International Harvester Co. v. Williams, 222 Ala. 589,133 So. 270 (1931); Alabama Power Co. v. Bass, 218 Ala. 586, 119 So. 625 (1928).
In slip and fall cases of this nature this court has held that the invitor is not an insuror of the safety of his invitees, that the principle of res ipsa loquitur does not apply, and that no presumption of negligence arises from the fact of the fall and injury. May-Bilt, Inc. v. Deese, 281 Ala. 579, 206 So.2d 590 (1967); Great Atlantic & Pacific Tea Co. v. Bennett, 267 Ala. 538,103 So.2d 177 (1958).
For the foregoing reasons, I would hold that the appellants were entitled to a directed verdict at the close of the evidence. It is thus unnecessary to address the issue of excessive damages.