These are appeals by Max and Esther Gray, plaintiffs below, from jury verdicts in favor of defendant, Mobile Greyhound Park, Ltd. Mrs. Gray sued for personal injuries sustained when she slipped and fell in the grandstand area of defendant's dog track. Her husband claimed damages for medical expenses and loss of consortium.
On March 22, 1976, Max and Esther Gray, along with their son Terry, attended the dog track owned and operated by Mobile Greyhound Park, Ltd. They paid a general admission fee and were admitted to the grandstand area of the facility at approximately 7:00 p.m., prior to the start of the races. When the Grays entered the grandstand area, it was substantially free of litter. It had been thoroughly cleaned that morning.
The defendant had no employee in the grandstand area who was assigned the task of cleaning the floor during the races; there were two full-time restroom attendants either in or near the grandstand area restrooms throughout the evening. Additionally, there were 25 to 30 trash receptacles in the grandstand area; and defendant's employees in the area were instructed to report safety hazards to the dog track's maintenance personnel.
During the course of the evening's races, there was a gradual accumulation of debris on the floor of the grandstand area which consisted of ticket stubs, paper, racing programs, plastic beverage cups and assorted other trash. This accumulation was a normal occurrence during racing events, *Page 1386 
largely because the spectators did not utilize the available trash receptacles.
At trial, Mrs. Gray testified as follows:
 "Q Was the crowd about average as compared to other evenings when you had been there?
"A As far as I know.
 "Q All right. Now, am I correct that you had been back and forth to the cashier or to the bet windows on several occasions before the time that you fell on that night?
 "A Yes, as I said, I'm not sure of that particular window, but I had been to the windows.
 "Q To the windows which are all in the same general area?
"A Same general area.
 "Q And on the other occasions am I right that you saw tickets and things like that on the floor?
"A Yes.
"Q And did you see programs on the floor?
"A I imagine so.
"Q All right, did you see any cups on the floor?
 "A I didn't pay attention. If I saw cups I'm not aware of it.
 "Q All right, but you are aware of the tickets and programs that you saw?
"A Right, yes, just debris in general.
 "Q All right. Now, this condition that you have told me about, the debris that you saw on the floor and the material that you saw on the floor, am I right that as the evening progressed the amount that was there . . .?
"A Right.
"Q . . . got more?
"A Right.
 "Q All right, and you noticed that and you were aware of it, is that correct?
"A Mm-hm.
"Q Ma'am?
"A Yes, sir.
". . .
 "Q No. Now, you have told us that you have seen that on this night and on other occasions that material would increase on the floor on a race to race basis, is that correct?
"A Right.
 "Q Well, am I correct that that was a normal condition that you had seen before and that you expected?
"A Yes, sir."
Shortly after the 6th dog race of the evening, at approximately 10:00 p.m., Mrs. Gray slipped and fell on a plastic cup near the winning ticket window. She had been to this same row of windows earlier that same evening but had not noticed the plastic cup upon which she slipped.
As part of its instruction to the jury, the trial court gave defendant's requested charge 5 which reads:
 "I charge you, members of the jury, that in and about her use of the defendant's premises where the accident described in the complaint occurred, the plaintiff assumed all of the normal and ordinary risks attendant upon the use of the premises, and the defendant was under no duty to reconstruct or alter the same so as to do away with known or obvious dangers, if any, and I further charge you that if you are reasonably satisfied from the evidence in this case that any danger on said premises was a danger which was known or obvious to the plaintiff or which, in the exercise of reasonable care, should have been known or obvious to her, then you may not return a verdict in favor of the plaintiff and against the defendant."
In a discussion between the trial court and counsel regarding the written requested charges of all parties, the following exchange occurred:
 "THE COURT: Start again. I am refusing number one, number four, number six, number eleven, number twelve, number fourteen, number fifteen and number sixteen. And for the record, I will give the Defendant's requested charge number two. I will give Defendant's requested charge number three. I will give the Defendant's requested charge number five. I will give the Defendant's requested *Page 1387 
charge number seven. I'm signing my name as I go. I will give number eight, number nine, number ten, number thirteen, number seventeen, number eighteen and number nineteen. Now, you all go ahead and put your exceptions in the record. Michael, I guess you're first. Any objections you've got, put them in the record.
". . .
 "MR. BOUNDS [for the Grays]: We have no objection to giving the Defendant's charge two and three. We object to the Court's giving Defendant's requested charge five on the grounds that it is confusing, misleading, that it is an incorrect statement of law, that it fails to predicate the Plaintiff's actions on approciation [sic] of existing dangers, it fails to properly define obvious dangers, it assumes that an obvious dangerous condition is a normal condition. It has no application to the facts in this case in that the condition which caused the Plaintiff to fall was not the manner in which the building was constructed, but related to the offensive or foreign substance on the floor and/or the manner in which the premises were maintained. It eliminates and fails to properly instruct the jury on proximate cause. We object to the Defendant's requested charge number seven on the grounds that it is an incorrect statement of law, it is confusing and misleading and it is incomplete. The charge fails to adequately or define or explain the duty of the Plaintiff to use reasonable care to, quote, avoid falling, unquote, and fails to adequately instruct the jury on proximate cause. No objection to eight, no objection to nine, no objection to ten."
After the noon recess, counsel for all parties gave closing arguments and the trial court instructed the jury, including the reading of defendant's requested charge 5, whereupon the following exchange occurred:
 "THE COURT: All right, put your exceptions in there.
"MR. BOUNDS: We don't have any"
The jury returned a verdict in favor of defendant Mobile Greyhound Park, Ltd. The trial court entered this verdict and subsequently denied the Grays' motions for new trial or for entry of a judgment notwithstanding the verdict. The Grays appealed and argue that the judgment must be reversed because the court gave charge 5 at the request of the defendant. We affirm.
Initially, we must consider whether the Grays have sufficiently complied with the letter and spirit of ARCP 51 so as to preserve their allegation of error for review by this court. This evaluation must be made in the light of our recent decision in Lollar v. Alabama Power Company, 371 So.2d 9 (Ala. 1979). In Lollar, there was an extended colloquy between the trial court and Lollar's counsel concerning several of the Power Company's proposed written charges. Although the discussion was lengthy, there is no single exchange between counsel and court from which one could specifically glean an objection comporting with the requirements of ARCP 51. After the trial court delivered its charge to the jury, including the defendant's requested written charge, Lollar's counsel stated that he had "no objection." We held that Lollar had failed to properly satisfy Rule 51 and, therefore, had not preserved error for review.
In this case, the Grays' counsel registered his objection to the defendant's charge 5. The objection satisfied the requirements of Rule 51. See Lollar v. Alabama Power Company, supra; Odom v. Linsey, 365 So.2d 664, (Ala. 1978); Hogan v.Alabama Power Company, 351 So.2d 1378 (Ala.Civ.App. 1977),cert. denied, 351 So.2d 1388 (Ala. 1977).
We do not agree with the assertion that charge 5 was so misleading or confusing as to require reversal. ARCP 51 states, in part:
 ". . . The refusal of a requested, written instruction, although a correct statement of the law, shall not be cause for reversal on appeal if it appears that the same rule of law was substantially *Page 1388 
and fairly given to the jury in the court's oral charge or in charges given at the request of the parties. . . ."
As a refused instruction must be evaluated in view of the entire jury charge, so also must a given requested charge be considered as a part of, and not separate from, the entire charge to determine whether it is misleading or confusing. See:Underwriters Nat'l Assurance Co. v. Posey, 333 So.2d 815 (Ala. 1976); Alabama Power Co. v. Tatum, 293 Ala. 500, 306 So.2d 251
(1975). Charge 5 is neither misleading nor confusing when read as an integral part of the whole.
The Grays argue that charge 5 was not only misleading but also improperly stated the duty owed by Mobile Greyhound Park, Ltd. to business invitee, Mrs. Gray.
In Tice v. Tice, 361 So.2d 1051, 1052 (Ala. 1978), we restated the duty owed an invitee.
 ". . . [As an invitee,] the duty owed to her by the defendants is the exercise of ordinary and reasonable care to keep the premises in a reasonably safe condition. Winn-Dixie v. Godwin, 349 So.2d 37 (Ala. 1977); May-Bilt, Inc. v. Deese, 281 Ala. 579, 206 So.2d 590 (1967). The owner of a premises in such cases is not an insurer of the safety of his invitees, and the principle of res ipsa loquitur is not applicable. There is no presumption of negligence which arises from the mere fact of an injury to an invitee. Delchamps, Inc. v. Stewart, 47 Ala. App. 406, 255 So.2d 586 (1971); cert. denied 287 Ala. 729, 255 So.2d 592 (1971); Great Atlantic and Pacific Tea Co. v. Bennett, 267 Ala. 538, 103 So.2d 177 (1958). Furthermore, the owner of premises has no duty to warn an invitee of open and obvious defects in the premises which the invitee is aware of or should be aware of in the exercise of reasonable care. Hand v. Butts, 289 Ala. 653, 270 So.2d 789 (1972); Crawford Johnson Co. v. Duffner, 279 Ala. 678, 189 So.2d 474
(1966). . . ."
Charge 5 addresses the absence of a duty of an invitor to safeguard the invitee against an open and obvious danger or defect in the premises. This absence of duty is commonly referred to as the "no duty" rule and has been thoroughly discussed in 65 C.J.S. Negligence § 63 (53), at pages 764-68, as follows:
 "The owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, since it is generally held, as stated supra § 64 (46), that he is subject to an alternative duty of either making the premises safe or warning of such dangers as are not known or obvious to the invitee.
 "The basis of the inviter's liability for injuries sustained by the invitee on the premises rests on the owner's superior knowledge of the danger, and, as a general rule, he is not liable for an injury to an invitee resulting from a danger which was known to the invitee or which was obvious or should have been observed by the invitee in the exercise of reasonable care, or from a condition which was as well known or as obvious to the invitee as to the inviter, or from a danger which the invitee should reasonably have appreciated before exposing himself to it, or which the inviter had no reason to believe would not be discovered by the invitee. It has been held that liability cannot be based on a condition of the premises which is incidental to the business being carried on there and to be expected by an invitee."
We find no error in charge 5 as it relates to the absence of duty in the invitor to warn or protect the invitee against open and obvious dangers.
The Grays argue that the littered condition of the floor could not, as a matter of law, be an obvious danger because the hazard did not exist when they were admitted to the area. We disagree. At such places of public amusement as race tracks, dog tracks, ball parks, stadiums and the like, an accumulation of debris upon the walkways during the course of the event is not unlike the build-up of rain water on a storekeeper's floor during storms. In both cases, the accumulation may adversely *Page 1389 
affect foot traffic — a fact with which the invitee is or should be aware. As stated by the court in Terrell v. WarehouseGroceries, 364 So.2d 675, 677 (Ala. 1978), in addressing the gradual accumulation of rain upon floor surfaces:
 ". . . To require a storekeeper to keep a floor completely dry during a rainstorm or to hold him responsible for every slick place due to tracked-in rain water would impose an unreasonable standard of care and would, in effect, make him an insurer of the customer's safety. Of course, each case must be examined in light of its particular circumstances, and where there are unusual accumulations of rain water or other circumstances, due care may require that the storekeeper take affirmative measures such as mopping, applying anti-slip compounds, or posting warnings."
Similarly, it would be unreasonable to require the owners-operators of public amusement facilities to keep their walkways completely free from litter during the course of an amusement event.
Of course, it is a matter of degree. At some point, a duty to remove the litter obviously arises; and, as in the rain water cases, each case must be decided on its own facts. Under the facts here, however, we cannot say that it was error to give defendant's charge 5.
The judgments appealed from are affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and BEATTY, JJ., concur.