1 So.2d 29

**STANDARD OIL CO. et al. v. GENTRY.**

3 Div. 338.

Supreme Court of Alabama.
Feb. 27, 1941.

Rehearing Denied March 27, 1941.

Jack Crenshaw, of Montgomery, for appellants.

Hill, Hill, Whiting & Rives, of Montgomery, for appellee.

64

GARDNER, Chief Justice.

■ Plaintiff on June 18th, 1939, slipped and fell at the filling station in the City of Montgomery operated and maintained, · as he insists, by defendants, Marvin Young and The Standard Oil Company, sustaining injuries for which he recovered judgment. Though the Standard Oil Company had prior to March 1st, 1939, operated this station, yet on that date a lease contract was entered into between said company and defendant Young, the latter agreeing to pay a flat rental of $25 per month and 1/2 cent per gallon of gasoline sold. And this lease contract continued in force and effect and was so in effect on the date of plaintiff's injury.

There is no evidence in this record indicating that this was intended as a mere subterfuge or that challenges the good faith of this transaction. The Standard Oil Company did not thereafter operate said station or in any manner control the same, though its agent supervised by way of occasional inspection this as well as all other stations dispensing its products, whether operated by the company or by its lessees.

■ Under these circumstances we would not be justified in the conclusion that this company was on the date of plaintiff's injury operating and maintaining this station, as alleged in the complaint. Shell Petroleum Corporation v. Linham, Miss., 163 So. 839; Goldstein v. Weiss, Sup., 172 N. Y.S. 131. But we are persuaded from the evidence in this case it was for the jury to determine whether or not the Standard Oil Company was estopped, so far as plaintiff was concerned, from claiming it was not operating and maintaining this station when his injuries were sustained. Prior to March 1st, 1939, the station had been so operated by the defendant oil company and plaintiff did business with said company at the station, and his testimony tends to show his reason for transferring his business was an unsatisfactory experience with an independent operator and a desire to do business with a more responsible party.

The sign exhibited to the public, the license exhibited in the office, both the telephone and city directory, and all other indications pointed to a continued operation of this station by the company. After as well as before March 1st, 1939, plaintiff had no basis for any belief there had been any change in the manner of operation. And plaintiff's evidence tended to show, as previously observed, that he relied upon the apparent operation by the company in continuing to do business at the station. Upon this question of estoppel a jury case was presented. Augusta Friedman's Shop v. Yeates, 216 Ala. 434, 113 So. 299.

■■ Of course plaintiff must have relied upon such representations by the company. Augusta Friedman's Shop v. Yeates, supra; Birmingham News Company v. Birmingham Printing Company, 209 Ala. 403, 96 So. 336; American Law Institute Restatement of the Law of Agency, Sections 265–267; Patterson v. Neal, 135 Ala. 477, 33 So. 39. And perhaps charge 20, requested by defendant oil company and refused by the court, properly stated the rule. But this same principle was embraced in the oral charge of the court and emphasized at its conclusion upon suggestion of counsel for defendant. The refusal of charge 20 cannot, therefore, constitute error to reverse.

■ Plaintiff was upon the premises to purchase gasoline, and had gone to the office for the purpose of signing a credit ticket. He was an invitee and it was the duty of defendants to exercise reasonable care to keep the premises in a reasonably safe condition. Defendants were no insurers of his safety, but were under a duty to observe reasonable care to see that the premises were reasonably safe for him as he came in to make his purchase. F. W. Woolworth v. Ney, 239 Ala. 233, 194 So. 667, and authorities therein cited.

We have duly considered the argument of counsel for the Standard Oil Company to the effect that the principle of ostensible agency applies only to contracts and not to torts which do not arise out of contracts, and then even in such case there must be reliance thereon. American Law Institute

Restatement of the Law of Agency, Sections 265–267; Mechem on Agency, Vol. 1, page 512; Birmingham News Company v. Birmingham Printing Company, supra; Augusta Friedman's Shop v. Yeates, supra.

But we consider this argument answered by the Yeates case, supra, by this court and that of the New York Court of Appeals approvingly cited therein of Hannon v. Siegel-Cooper Company, 167 N.Y. 244, 60 N.E. 597, 598, 52 L.R.A. 429.

As appropriate here, we think it well to set out the following excerpt from the opinion of the New York court: "It may very well be that where the duty, the violation of which constitutes the tort sued for, springs from no contract with, nor relation to, the principal, a party could not be estopped from denying that the wrongdoer was his agent, even though he had held him out as such. In such a case the representation of the principal would be no factor in producing the injury complained of. But, whenever the tort consists of a violation of a duty which springs from the contract between the parties, the ostensible principal should be liable to the same extent in an action ex delicto as in one ex contractu. It is urged that the representation that the operating dentists were the defendant's servants did not mislead the plaintiff to her injury, and therefore should not estop the defendant from asserting the truth. There is no force in this claim. If A. contracts with the ostensible agent of B. for the purchase of goods, he relies, not only on the business reputation of B. as to the goods he manufactures or sells, but on the pecuniary responsibility of B. to answer for any default in carrying out the contract. So here the plaintiff had a right to rely, not only on the presumption that the defendant would employ a skillful dentist as its servant, but also on the fact that if that servant, whether skillful or not, was guilty of any malpractice, she had a responsible party to answer therefor in damages."

So in the instant case plaintiff's evidence tended to show he continued to rely upon the appearance of things, that is, that the Standard Oil Company was still operating the station where he received his injuries, and according this proof due weight the jury might well infer that his reliance throughout was upon the company's pecuniary responsibility to answer for any default arising out of his business engagements with it.

Defendants further insist the evidence was insufficient upon the question of negligence for submission to the jury. The agent of the Standard Oil Company who has supervision over all stations in the city testifying for defendants stated that "company owned" stations as a general rule are scrubbed three or four times a week and oftener if necessary. "It is an important part of any filling station operation to keep the ground clear from any grease and oil".

Defendant Young, actually in charge and operating the station, testified that on an average he scrubbed the floor of the driveway twice a week, but insists it was so washed and scrubbed the Saturday afternoon before plaintiff's fall the following afternoon.

Plaintiff testified that as he came out of the station office, where he had gone to sign the ticket for his gasoline purchase, and as he stepped down off the step—the first or second step he took after coming down— he struck a spot in "the pavement that was covered with grease", which caused his fall and rather severe injury resulted. He saw the place after his fall, he states and it was about two feet, "seemed to be a depression in the concrete where one of the sections had been knocked off and this grease seems to have accumulated in the corner * * * accumulated in the corner of the block * * * It was grease. I say grease; might have been oil originally, and had dirt and dust collected in it, and you could call it grease. * * * It was black, and certainly it was a greasy place".

Plaintiff further stated it was "caked" and appeared to be grease. This testimony, if believed, sufficed to refute the contention here urged that the place where plaintiff slipped and fell may have been created by a customer's car only a few minutes before, and considered as a whole and in connection with plaintiff's rather violent fall we are persuaded a jury question was presented as to whether or not this greasy place had been on defendants paved walk a sufficient length of time to charge defendants with notice thereof. F. W. Woolworth Company v. Erickson, 221 Ala. 5, 127 So. 534; Zanes v. Malden & Melrose Gas & Light Co., 298 Mass. 569, 11 N.E.2d 498; Moore v. American Stores Co., 169 Md. 541, 182 A. 436.

66

The term "Ordinary care", as noted by the Maryland court in the Moore case, supra, citing Restatement of the Law of Torts, Section 343, comment E, is a relative term the meaning of which varies with the nature and character of the object to which it is applied. This is a filling station where in the nature of things oil and grease are apt to accumulate, and the varying meaning of "ordinary care" as to such stations is illustrated by the testimony of the agent for the Standard Oil Company who considered it necessary that there should be a cleaning three or four times a week, as compared with the testimony of defendant Young who thinks an average of twice a week meets all requirements. But, of course, there is no intention here to indicate any particular number of times of cleaning meets the rule of duty as to reasonable care. The necessity of the situation may require more frequent treatment, dependent of course upon the condition of the station in view of the nature. of the business.

True plaintiff stated, referring to the greasy spot, that it did not appear to have been there "very long". But what was the idea intended to be conveyed by that expression was for the jury's consideration, as that too is a relative .term and may vary with the different notions the witness may have as to the question of time limit. And in considering the testimony the jury is to weigh all the witness said upon the subject and not merely an isolated expression as above indicated.

Defendants insist there existed no such grease spot on the premises and further urge that the verdict rendered was contrary to the great weight of the evidence and that a new trial should have been awarded on that ground. The evidence has been read with care and studied in the light of the argument of counsel. The rule by which this court is guided upon questions of this character is well known and needs no repetition. Guided by that rule, the conclusion has been reached that we would not be here justified in disturbing the ruling of the trial court upon that ground, and that no error here intervened.

Finding no reversible error, the judgment is due to be affirmed.

It is so ordered.

Affirmed.

BOULDIN, FOSTER, and LIVINGSTON, JJ., concur.