## 19209

Eva Mae WEEKS, Appellant, v. PILOT LIFE INSURANCE
COMPANY, Respondent.

(180 S. E. (2d) 875)

*Messrs. Malcolm K. Johnson,* and *Ernest L. Cook,* of Hartsville, *for Appellant,*

*Messrs. Paulling & James,* of Darlington, *for Respondent,*

April 26, 1971.

BUSSEY, Justice.

In this action plaintiff-appellant, as named beneficiary, seeks to recover benefits allegedly due under a group insurance policy upon the death of her husband, Clarence Weeks, on December 23, 1964. The trial judge granted a directed verdict in favor of the defendant-insurer and the plaintiff has appealed.

It is elementary that in the decision of this appeal the evidence and all of the inferences reasonably deducible therefrom have to be viewed in the light most favorable to the appellant. We state the facts in the light of the foregoing principle. The respondent (who will be referred to simply as Pilot) on August 1, 1964 issued a group insurance policy to Olin Grant Paint & Tile Company, which will be referred to simply as Grant. Clarence Weeks had been employed by Grant for two or more years and was one of the employees

insured under the aforesaid policy from its inception. Grant, the policyholder, deducted weekly from the pay of its insured employees and remitted the total premiums monthly to Pilot.

Shortly following the payroll period ending October 1, 1964, Weeks, as was his custom, went on an annual vacation visit to a brother in Georgia. He, however, did not notify Grant or let Grant know when or if he intended to return to work. Upon Week's departure, Grant had on hand deductions from Weeks' pay sufficient to pay a portion, but not all, of his premium for the month of October. Mr. Hancock (the office manager for Grant who handled the payroll and insurance accounts) not knowing whether or not Weeks would return, notified Pilot to cancel Weeks' insurance as of October 1st.

Weeks did not report for work again until Wednesday, November 4th, but upon his return promptly inquired of Hancock as to the status of his insurance. In this connection it should be pointed out that the certificate issued to Weeks contained on the front page thereof, under a heading "Important Notice", the following:

"If you should cease active, full time work for any reason, you should ask the policyholder what arrangements, if any, can be made to continue your insurance." (The policyholder was, of course, the employer.)

Hancock informed Weeks that he, Hancock, had cancelled his insurance as of October 1st. Hancock did not know how to go about reinstating Weeks' insurance and, therefore, postponed any action thereabout until the next regular visit of Mr. Gross, a service representative of Pilot, who was expected on or about December 1st. Hancock so advised Weeks who inquired on more than one occasion.

As mentioned, the effective date of the insurance policy was August 1, 1964, and it contained a provision for a waiting period of 60 days for employees whose employment "commenced after August 1, 1964 * * *." Whether this clause of the policy was ever intended to apply to employees

whose employment commenced prior to August 1, 1964, but for one or another reason was temporarily interrupted, is, to say the least, debatable. We observe no provision in the policy which literally or specifically deals with reinstatement of an empoyee's insurance which has been cancelled because of temporary cessation of work.

The foregoing provision of the policy, however, contributed to Hancock's uncertainty as to how he should go about reinstating Weeks' insurance. Upon the arrival of Gross, he, after being acquainted with the facts of the matter, advised Hancock that such 60 day probationary or waiting period could be waived by the *employer* as to Weeks, provided the waiver applied to all returning employees without any discrimination. For the purpose of accomplishing such waiver by the employer, Gross wrote out the following note:

"This employee was previously employed with us. We wish all returning employees to be reinstated without the probationary period, etc."

Gross also prepared an application card for the signature of Weeks; he instructed Hancock to send the informal note and application to Pilot along with the regular monthly statement and remittance due some time later in the month of December, and advised Hancock that Weeks would be covered as of December 1, 1964. Hancock, after his conference with Gross, advised Weeks that he was covered as of December 1, 1964. Since Hancock still had on hand an October insurance premium deduction from Weeks' pay, he deducted no amount therefor for the week ending December 3rd, but did deduct for the weeks ending December 10th, 17th and 23rd, with the result that Weeks' entire December 1964 premium, plus a slight excess, had actually been paid by Weeks at the time of his death.

Under the accounting and reporting system existing between Pilot and Grant no part of this December premium payment was supposed to be forwarded to Pilot until during the month of January. Following the visit of Gross on or

about December first, Hancock placed the informal waiver note and Weeks' application card in an envelope where he kept papers relevant to group insurance coverage. Such were not promptly forwarded to Pilot, being held, in accordance with instructions from Gross, awaiting the next monthly statement from Pilot. Such statement did not arrive until on or about December 20th, and it was not until December 22nd that Mr. Hancock had Weeks sign the application card, on which date the documents were mailed to Pilot, but not received at the home office until after the death of Weeks.

There is contained in the policy with respect to life insurance the following pertinent clause:

"Cessation of active work in the eligible classes will be deemed to constitute termination of employment. However, the Policyholder, acting on a basis precluding individual selection, may consider any person who is disabled, granted a leave of absence, (or) temporarily laid off, as still employed in the eligible classes until the Policyholder terminates the insurance of such person by notifying Pilot Life to that effect or by discontinuing premium payments on account of his insurance, provided that the employment of any person in the eligible classes shall not be deemed to continue for longer than three months following the date on which he begins a leave of absence or is temporarily laid off."

The obvious purpose and intent of this clause was to give the employer, at its option, complete control, for a period of three months, over whether an employee's insurance would be terminated because of cessation of active work. Both Gross and a Mr. Thompson, manager of the group administration department of Pilot, testified at the trial. While no mention of the above clause of the policy is made in the testimony of any of the witnesses, there is evidence to the effect that both of the home office representatives of Pilot, who testified in this case, considered the prompt reinstatement of Weeks' insurance to be a matter solely within the discretion, option and election of the employer, so long as

there was no discrimination in favor of or against any returning employee. It is, moreover, clearly inferable that such representatives construed the above quoted policy provision as according that absolute right to the employer-policyholder.

The lower court in granting the motion for a directed verdict apparently overlooked the following legal proposition. The employer, Grant, and its office manager, Hancock, were both agents of the insurer Pilot, as a matter of law, by virtue of Code Sec. 37-233. They transmitted applications for insurance, collected premiums, etc. for Pilot. In *Greer v. Equitable Life Assur. Soc. of United States,* 180 S. C. 162, 185 S. E. 68, this Court without mention of or reliance upon the Code Section above cited, held an employer to be an agent of the insurer under circumstances almost identical with those of the present case. See also *Coker v. Aetna Life Ins. Co.,* 188 S. C. 472, 199 S. E. 694. We quote the following pertinent language from 14 Appleman, Insurance Law and Practice, 352:

"Where the employer collects premiums under group policies by deductions from the wages of employees, he is regarded as the agent of the insurer, so that such deduction amounts to payment, as far as the insurer is concerned, even though not remitted to the insurer."

We briefly summarize the evidence in the light of the applicable law. Gross, the service representative, advised Hancock, who was also legally the agent of Pilot, that the reinstatement of Weeks' insurance, without a probationary period, was a matter strictly within the discretion of the employer, and that such coverage would be effective as of December 1, 1964, upon the application card and note being forwarded. Hancock, in turn, advised Weeks that his coverage was reinstated and effective as of December 1, 1964, and Hancock, the legal agent of Pilot, collected from Weeks, during his lifetime, the entire December 1964 premium, plus a slight excess.

While there are some conflicts in the evidence, under any view thereof there can be little doubt that no question of coverage would ever have arisen but for the acts or omissions of the agents of Pilot. Had Hancock known how to proceed, or sought to ascertain, when first approached on November 4th, or had the application and informal note been promptly forwarded on or about December first, instead of being held Until December 22nd under the instructions of Gross, we consider it most probable that this controversy would not even be before us. Any neglect of either of these agents to proceed more promptly is chargeable to his principal, Pilot, not to Weeks, the employee.

Viewing the evidence in the light most favorable to the appellant, all of the grounds of estoppel are present and the trial judge should have submitted to the jury the issue of whether or not Pilot was estopped to deny coverage. *Spencer v. Republic Nat. Life Ins. Co.,* 243 S. C. 317, 133 S. E. (2d) 826; *Moore v. Palmetto State Life Ins. Co.,* 222 S. C. 492, 73 S. E. (2d) 688; *Ellis v. Metropolitan Casualty Ins. Co. of New York,* 187 S. C. 162, 197 S. E. 510; *Pitts v. New York Life Ins. Co.,* 247 S. C. 545, 148 S. E. (2d) 369.

The judgment below is reversed and the cause remanded for a new trial.

Reversed and remanded.

Moss, C. J., Lewis and Brailsford, JJ., concur.

Littlejohn, J., concurs in result only.