325 So.2d 187

**BLUE CROSS–BLUE SHIELD OF ALABAMA, a corporation**

v.

**William James THORNTON and Rosie Mae Thornton.**

**Civ. 634.**

Court of Civil Appeals of Alabama.

Dec. 10, 1975.

Rehearing Denied Jan. 7, 1976.

Taylor D. Wilkins, Jr., Bay Minette, for appellees.

J. Connor Owens, Jr., Bay Minette, for appellant.

BRADLEY, Judge.

This is an appeal from a judgment rendered against defendant Blue Cross-Blue Shield for amounts recoverable under a group hospitalization insurance policy. Gunter-Dunn Company, a defendant below, does not join in the appeal.

Plaintiffs, Mr. and Mrs. Thornton, commenced this action on December 21, 1973 by filing a complaint in the Circuit Court of Baldwin County, alleging that Blue Cross-Blue Shield issued an insurance policy which by its terms provided coverage to Mr. Thornton and his dependents; that Blue Cross-Blue Shield agreed to pay Mr. Thornton and his dependents the cost of

medical expenses for in-patient hospital services; that on March 27, 1972 Mrs. Thornton, as the result of an automobile accident, was confined to a hospital, thereby incurring hospital and doctor bills; that all premiums due on the insurance policy at the time of the accident were paid; and that Blue Cross-Blue Shield refuses to pay the costs of the wife's hospital and doctor services.

Blue Cross-Blue Shield filed an answer alleging that Mr. Thornton had in fact been enrolled for coverage under a payroll group plan issued to Gunter-Dunn Company, his employer; that the entire group was terminated at the request of Gunter-Dunn effective March 20, 1972; and that at the time of the automobile accident, neither of the Thorntons was covered by any policy issued by Blue Cross-Blue Shield.

Plaintiffs thereafter filed an amended complaint, adding an allegation they had not received notice of or consented to any cancellation of the insurance contract, and therefore any cancellation by Gunter-Dunn was ineffective as to them.

Subsequent to the denial of a motion to dismiss, and to a further amendment to the complaint, Blue Cross-Blue Shield amended their answer to include the statement that Gunter-Dunn had requested cancellation effective March 31, 1972, but that the insurance was actually cancelled by Blue Cross-Blue Shield effective March 20, 1972; and further that Mr. Thornton, at the time this claim accrued, was not an employee of Gunter-Dunn, and therefore not entitled to the benefits of any insurance policy issued to Gunter-Dunn.

At the hearing of this cause, the court sitting without a jury heard the husband's testimony and that of Mr. Pervie Mathews, manager of subscriber's accounts for Blue Cross-Blue Shield. Additionally, several documentary exhibits were introduced, including the group policy and related papers; plaintiffs' Blue Cross-Blue Shield identification card; an itemized hospital bill; and a check dated March 15, 1972, drawn by Mr. Thornton to the order of Gunter-Dunn, purportedly representing plaintiffs' share of the March insurance premium. Also, plaintiffs introduced a second insurance policy from Blue Cross-Blue Shield, which Mr. Thornton claimed was delivered to his mailbox at Gunter-Dunn. However, the evidence tends to show that plaintiffs were covered, if at all, by the group hospitalization contract issued to Gunter-Dunn by Blue Cross-Blue Shield.

This group plan provided coverage to all eligible employees, and Gunter-Dunn paid a group premium based on the number of employees it invoiced to Blue Cross-Blue Shield each month. Premiums were due on the twentieth of each month, with a thirty day grace period. By specific provision, coverage ceased on the twentieth if any amount was outstanding, but would be reinstated if payment of amounts due was made during the grace period. The testimony taken at the hearing tended to show that Gunter-Dunn required contribution of premiums from the employees, as was authorized by the group insurance contract. In most cases contributions were made by payroll deduction.

The problem which led to this lawsuit arose because plaintiffs made contributions in a different manner. In January 1971 Mr. Thornton was injured and did not return to his duties at Gunter-Dunn. He was paid no more wages after this accident; he drew workmen's compensation in lieu of wages. Nevertheless, Gunter-Dunn continued to carry Mr. Thornton on their monthly insurance group invoice, and required him to make his monthly premium contribution by check. The issue of whether plaintiffs were thereby ineligible for coverage was not assigned as error and will not be considered on appeal.

In February 1972 Gunter-Dunn wrote Blue Cross-Blue Shield, informing the latter that a new group plan with Aetna Life & Casualty had been arranged, commencing April 1, 1972. Cancellation of the ex-

isting group contract was requested effective March 31, 1972. It is stipulated by the parties that no further correspondence regarding the requested cancellation occurred prior to March 31.

On March 17 plaintiffs gave Gunter-Dunn a check for their contribution to the premium due March 20. Gunter-Dunn, however, never forwarded to Blue Cross-Blue Shield that money or any other portion of the group premium due on March 20, 1972.

On March 27 the accident which produced plaintiffs' present claim took place. Blue Cross-Blue Shield denied coverage, saying that the policy had been cancelled effective March 20, 1972.

On March 19, 1975 the trial court entered its decree awarding plaintiffs $656.-60, and making the following factual findings: that plaintiffs were entitled to notice of cancellation of the group policy under the terms of the policy; that the policy was cancelled by Blue Cross-Blue Shield because Gunter-Dunn had obtained other insurance; that Gunter-Dunn had requested cancellation effective March 31, 1972, and Blue Cross-Blue Shield's attempt to cancel on March 20, 1972, without notice to either plaintiffs or Gunter-Dunn was ineffective; and that plaintiffs had paid all premiums required of them under the policy. On March 24, 1975 the trial court amended its decree to add the finding that Blue Cross-Blue Shield attempted to cancel for the reason that Gunter-Dunn had obtained other insurance when, in fact, no other insurance was in effect on either the date of attempted cancellation or the date Mrs. Thornton suffered her injuries. The amount of the award was unamended.

Blue Cross-Blue Shield's motion for new trial was denied, and the present appeal was filed.

■ Despite the contrary finding of the trial court, we believe that .the true cause of cancellation was the failure of Gunter-Dunn to pay premiums for the group poli-

cy due March 20. Cancellation for this reason under the terms of the policy is self-executing; it does not require an election or other affirmative procedure by the insurer. Section VI of the policy clearly states than when premiums are not timely paid coverages ceases. This provision is unambiguous; there is no room for the court to vary it by construction or by taking inconsistent oral testimony, *General Motors Acceptance Corp. v. Kendrick*, 274 Ala. 566, 150 So.2d 185. Furthermore, there is no evidence of conduct by Blue Cross-Blue Shield on which to base a finding of waiver as to the group policy.

Notwithstanding this view toward cancellation of the group policy, we perceive that the trial court discovered a unique legal relationship arising among Mr. Thornton, Gunter-Dunn and Blue Cross-Blue Shield, which does not easily submit to analysis under the terms of the written contract alone, but called for the court to apply a more critical decisional theory in adjusting the rights and liabilities of the parties.

Mr. Thornton stands apart from the other members of the group. Unlike any other previously covered employee, his portion of the premium was not deducted from his salary and then forwarded to Blue Cross-Blue Sheld by Gunter-Dunn, but it was collected from him with the understanding that it was the amount due for group hospitalization coverage under the policy in effect on March 17, 1972. The trial court found that he "paid all premiums required of him under said insurance policy." We are asked to reverse this finding.

■ There are no Alabama decisions directly controlling on these facts, but there is a definite trend, both in Alabama and other jurisdictions, to view this problem as one of agency, *Harrison v. Insurance Co. of North America*, 294 Ala. 387, 318 So.2d 253; *Couch v. Connecticut General Life Insurance Co.*, 216 So.2d 72 (Fla.App. 1968). If, under a group insurance policy,

the employer is the agent of the insurer for the purpose of collecting the employees' premiums, then the insurer remains liable on the policy to those employees whose premiums the employer has collected or deducted from wages, even after the group master policy has been cancelled because the employer has not paid the entire premium. If the employer is not the insurer's agent for this purpose, then the insurer is not liable after cancellation. Cases outside of Alabama are in conflict as to when the employer is the insurer's agent. Agency has been found in *John Hancock Mut. Life Insurance Co. v. Dorman*, 108 F.2d 220 (9th Cir. 1939); *Weeks v. Pilot Life Insurance Company*, 256 S.C. 81, 180 S.E.2d 875; *Voris v. Aetna Life Ins. Co.*, 26 F.Supp. 722 (N.D. Okl.1939); and *Likens v. John Hancock Mutual Life Insurance Co.*, 246 F.2d 897 (10th Cir. 1957). Agency has been rejected in *Couch v. Connecticut General Life Insurance Co., supra*; and *Newman v. Home Life Ins. Co.*, 255 N.C. 722, 122 S. E.2d 701. The *Couch* case specifically notes that the cases which have held the employer to be the insurer's agent rely on statutory support. We observe that this is not necessarily true. The *Dorman* decision, in particular, was rendered in the absence of a controlling statute.

■ The existence of agency should be determined by an examination of the facts of each case. If a consideration of the whole evidence is susceptible to the inference that one who collects money does so as agent for another, then a jury question exists, *Patterson v. Williams*, 206 Ala. 527, 91 So. 315. Where the trial court sits without a jury, its finding of fact has the effect of a jury verdict, *Hall v. Clark*, 225 Ala. 87, 142 So. 65. Such findings should be reversed only where palpably wrong, Alabama Digest, *Appeal and Error,* ☜1008. The trier of fact's right to determine the existence of agency applies to agency created by estoppel and to apparent powers of agency, *Standard Oil Co. v. Gentry*, 241 Ala. 62, 1 So.2d 29; *Augusta Friedman's Shop, Inc. v. Yeates*, 216 Ala. 434, 113 So. 299.

These latter aspects of agency are well defined:

"An agent's authority is measured by the powers which his principal has caused or permitted him to 'seem to possess.' As to third persons without knowledge or notice, it is not limited to the powers actually conferred and those to be implied as flowing therefrom, but includes as well the apparent powers which the principal by reason of his conduct is estopped to deny. [Citations omitted.]

. . . . . .

"Such apparent authority is the real authority so far as affects the rights of a third party without knowledge or notice. [Citations omitted.]" *Patterson v. Williams, supra*.

■ A defendant has been estopped to deny an agency even where the purported agent deals at arm's length as to that defendant, *Standard Oil Co. v. Gentry, supra*. And an agency by estoppel can arise where plaintiff had no basis for any belief that there had been a change in the manner of operating a facet of business, when such a change has actually occurred, *id*. As between principal and agent the latter's authority may be limited by secret instructions and restrictions; but as to third persons ignorant of the extent of the agent's authority "mutual rights and liabilities are governed by the apparent scope of the agent's authority," *Patterson v. Williams, supra*. Secret instructions which conflict with the apparent powers of the agent will not affect the rights of third parties who deal in good faith, *Portsmouth Cotton Oil Refining Corp. v. Madrid Cotton Oil Co.*, 200 Ala. 634, 77 So. 8. An agency cannot be effectively terminated without notice to third parties affected, *Herndon v. Stanton*, 221 Ala. 427, 129 So. 18.

■ The trial court's finding that plaintiffs had paid all necessary premiums

to Blue Cross-Blue Shield should be upheld if there is evidence which allows the inference that (1) plaintiffs reasonably came to rely on the belief that in dealing with Gunter-Dunn they were dealing with an agent of Blue Cross-Blue Shield, (2) that Blue Cross-Blue Shield caused or acquiesced in this reliance, and (3) that Blue Cross-Blue Shield never notified plaintiffs that the apparent agency had terminated. Under *Standard Oil Co. v. Gentry, supra,* the actual arm's-length relationship between Gunter-Dunn and Blue Cross-Blue Shield would not, as a matter of law, demand reversal of the trial court.

In addition to the evidence already recited, the trial court had before it material which it could properly infer constituted indicia of agency: Mr. Thornton's testimony that he knew Gunter-Dunn maintained Blue Cross-Blue Shield group coverage, and that once monthly payments were given to Gunter-Dunn, he had no knowledge of what became of them; his testimony that he picked up a copy of a Blue Cross-Blue Shield contract and ID card at Gunter-Dunn's office, and that Gunter-Dunn had in the past notified him of delinquencies in his premium payments; Mr. Pervie Mathews' testimony that in matters of invoicing, collecting premiums, and cancellation, Blue Cross-Blue Shield had dealt with either Gunter-Dunn or the parent Johnston Stores; that plaintiffs' ID card number is carried in Blue Cross-Blue Shield records as part of a "group invoice series" compiled by Gunter-Dunn; and, finally, the terms of the master policy itself which required Gunter-Dunn to furnish "such information as may reasonably be required" by Blue Cross-Blue Shield to enroll and terminate employees; required the employer to distribute benefit booklets and ID cards to its employees and to forward notices to them; and which levied premium fees on a per-employee basis.

■ This evidence tends to show that Gunter-Dunn "handled" a portion of the task of administering the insurance policy, and that Blue Cross-Blue Shield had access to the persons to whom it extended coverage in exchange for pecuniary consideration primarily by using Gunter-Dunn's offices. We are not prepared to say that the trial court erred in finding, as we presume it did, that these handling and accessorial functions demonstrated an agency relationship, *John Hancock Mutual Life Ins. Co. v. Dorman, supra.* In Alabama, there is considerable reason to conclude that such a finding is not merely permitted but required. Payment by an employee of a monthly premium to the employer "is payment to the insurer so far as such employee is concerned," *All States Life Ins. Co. v. Tillman,* 226 Ala. 245, 146 So. 393. "Undoubtedly, where the employee contributes to the premium payment, he should have something to say regarding the cancellation . . . ." *Shears v. All States Life Ins. Co.,* 242 Ala. 249, 5 So.2d 808. This clearly discernible trend toward recognition of an agency relationship between insurer and employer is cemented by the very recent opinion of *Harrison v. Insurance Co. of North America, supra,* in which the Alabama Supreme Court held an employer to be the insurer's agent for purpose of notice of changes in coverage. It is not necessary for us to say that such a result is required in the instant case; it is sufficient that this line of cases indicates that the trial court's decision is not erroneous. In addition to handling substantial accounting activities for the insurer, Gunter-Dunn provided the means of access Blue Cross-Blue Shield had to the people it covered. That, in a proper case, such an intermediary can be an accessorial agent by estoppel is clear from *Standard Oil Co. v. Gentry,* and *Augusta Friedman's Shop, Inc. v. Yeates,* both *supra.*

■ The trial court was persuaded that the facts made this an appropriate case to find such an agency. There is no basis for reversal. Although the group policy was effectively cancelled as to the group, defendant is estopped to deny coverage of a group member whose premium was collect-

ed while the policy remained in force, and whose claim arose during the period for which the premium was paid and before he received notice of cancellation.

There being no reversible error in the record, we affirm the judgment of the trial court.

Affirmed.

WRIGHT, P. J., and HOLMES, J., concur.