This is an appeal by Thomas C. Hudson, Jr., from a decree of the Circuit Court of Jefferson County. That court, sitting without a jury, awarded $2,000 in damages and injunctive relief to the DuraWear Corporation.
The primary issue on appeal is whether Hudson was an employee of the DuraWear Corporation or an independent contractor. We find no reversible error in the trial court's finding that Hudson was not an independent contractor and, accordingly, affirm.
The controversy arises out of the following facts: *Page 183 
In January of 1975, Hudson was hired as a traveling salesman for DuraWear. Pertinent provisions of the agreement he signed with DuraWear are as follows:
 "(b) You shall devote your full working time and energy to the business of our Company, DuraWear Corporation, and you shall not directly or indirectly engage in any other business or commercial venture during the continuance of your employment with us without our permission.
 "(c) Our Company's catalog and price list, which may be amended or modified from time to time, will be furnished you. You shall strictly adhere to the provisions thereof.
 "(d) You will not accept payment from a customer in any form other than by check, money order or draft payable to DuraWear Corporation. Such payments shall be immediately forwarded to our office in Birmingham, Alabama.
 "3. You will receive a vacation in accordance with our Company's policy.
 "4. From time to time we will provide you with sales kits, presentation material and promotional merchandise. Memorandum charges to your account will be made for such items at prices established upon delivery to you. . . .
. . . . .
 "7. You will indemnify and save harmless our Company from any and all loss, claim, damage and costs (including reasonable attorney's fees) that the Company may sustain or become liable for, by reason of claims against it, on account of any illegal or wrongful or negligent acts committed by you. We may require of you, at your expense, to maintain sufficient liability insurance, as determined by us, to protect our interests in such respect.
. . . . .
 "9. For a period of two (2) years after the termination of your employment with us, you will not, within the area described in `Exhibit A' attached hereto, directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation, or control of any business similar to the type of business conducted by us at the time of the termination of your employment. In addition to any other rights or remedies available to us, the breach of the provisions contained in this paragraph shall entitle our Company to enforcement by court injunction.
. . . . .
 "11. Any and all inventions, improvements, discoveries or results of research, whether patentable or not, which are made, invented or discovered by you, either singly or jointly with others, during your employment with us, which relate in any manner to products of our Company or to any process, material, apparatus, equipment or article worked on in connection with your employment, shall be promptly disclosed by you to us and shall become the exclusive property of our Company. . . .
. . . . .
 "13. DuraWear Corporation may use your name and photograph for publicity and advertising purposes."
The agreement further specified that customer lists and customer control cards received and maintained by Hudson were restricted confidential business information to be returned to DuraWear upon its request.
Upon joining DuraWear, Hudson was given a "job description" which specified his duties with the company. Bruce Bean, Hudson's area supervisor and DuraWear's regional manager, also taught Hudson selling techniques during his first one or two days on the job by allowing Hudson to observe Bean making sales. While with the appellee-company, Hudson was required to submit detailed weekly activity reports to Bean. Additionally, Hudson stated that he was supervised by and reported to Bean on a weekly basis. Hudson also testified that the company's national sales manager provided him with a monthly sales quota.
Hudson further testified that Bean traveled with him about one day per month. *Page 184 
On those occasions, Bean did not plan Hudson's sales route, but merely rode with Hudson to places of the latter's choosing. Apparently, Hudson's sales routes were never planned for him by DuraWear, although the DuraWear president, Harold P. Caine, stated that on more than one occasion he had directed Hudson to call on specific customers.
While with DuraWear, Hudson drove his car, paid his gasoline and other automobile expenses, paid his food and lodging expenses, and procured insurance for his automobile.
Hudson completed an "Employee's Withholding Allowance Certificate" to enable DuraWear to withhold federal income tax on him. The company also paid social security for Hudson during his tenure with the company. Hudson was paid on a commission basis.
On January 27, 1976, Hudson submitted his resignation to the company. Shortly thereafter, he began doing business as Hudco Industrial Products. He sold different lines of industrial products, some of which were similar in both content and use to DuraWear's plastic and ceramic products. Hudson sold these products to some of the same customers to whom he had sold or attempted to sell DuraWear products while working for the latter. He made at least $2,000 "gross profit" in these transactions. This profit was derived sooner than two years after his resignation from DuraWear.
On June 17, 1976, DuraWear filed a complaint seeking damages and injunctive relief from Hudson's alleged breach of the "noncompetition" clause (paragraph 9 set out hereinabove) of their agreement.
Although contracts in restraint of trade are generally prohibited in Alabama (Tit. 9, § 22, Code of Alabama 1940, as amended), § 23, of Tit. 9 provides an exception to the general rule.
 "[O]ne who is employed as an agent, servant, or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof, so long as the buyer or any person deriving title to the good will from him, and so long as such employer carries on a like business therein."
Hudson contends that his agreement with DuraWear does not fall within this exception because he was an independent contractor.
Other pertinent facts reveal that on July 9, 1976, Hudson filed a motion to dismiss, alleging, inter alia, that DuraWear's complaint did not allege the requisite control over him to show that he had been a servant or an employee of DuraWear and thus subject to the terms of the noncompetition provision of the agreement. This motion was denied by the trial court on July 23, 1976.
Both Caine, the president of DuraWear, and Hudson were deposed on August 10, 1976. At this proceeding, Caine refused to answer questions relating to the identity of his past and present suppliers of ceramic and plastic materials. Hudson filed a motion to compel Caine to answer these questions on August 16, 1976. The following day, this motion was denied by the trial court. Questions regarding this subject matter were also propounded to Caine at trial; objections to the questions were sustained.
Trial was had in the Circuit Court of Jefferson County on September 8, 1976. On that same date, the trial court entered a decree which awarded $2,000 in damages to DuraWear and further provided:
 "The Defendant [Hudson] is hereby enjoined, for a period of one year from January 27, 1976 from making solicitations or sales to any of the customers of Plaintiff [DuraWear] within the territory set forth in the employment contract."
The court found that Hudson was not an independent contractor. As noted earlier, from that decree, Hudson takes this appeal.
As previously stated, Hudson contends he is not bound by the terms of the agreement with DuraWear. He states that Tit. 9, § 23, permits agreements which restrict the operation of a lawful business only between *Page 185 
employees, servants, agents, and their employers. He states that his relationship with DuraWear was that of an independent contractor.
The Supreme Court of Alabama has stated the following with regard to whether the relationship of employer-employee or independent contractor exists:
 "[I]t is the reserved right of control rather than its actual exercise that furnishes the true test of whether the relationship between the parties is that of an independent contractor or of employer and employee — master and servant. . . .
 "For one to be an employee, the other party must retain the right to direct the manner in which the business shall be done, as well as the result to be accomplished or, in other words, not only what shall be done, but how it shall be done. . . ." (Weeks v. C.L. Dickert Lumber Company, 270 Ala. 713, 714, 121 So.2d 894, 895 (1960).
Hudson states the following facts conclusively establish that the trial court's finding that he was not an independent contractor is plainly and palpably erroneous: that, contrary to driving a company car, he operated his automobile while traveling his sales routes; that he paid for his gasoline; that he paid his personal expenses; that he traveled when and where he pleased within the territory assigned him in search of customers; and that he was paid on a commission basis. He cites numerous cases wherein more than one of the above facts have served as a basis for a court's holding that a salesman was not an employee of the company for whom he was working. DortchBaking Co. v. Schoel, 239 Ala. 266, 194 So. 807 (1940);Greenwald v. Russell, 233 Ala. 502, 172 So. 895 (1937); GeneralRefrigeration Sales Co. v. Taylor, 229 Ala. 479, 158 So. 314
(1934); Aldrich v. Tyler Grocery Co., 206 Ala. 138, 89 So. 289
(1921). However, our examination of these authorities discloses that in none of these cases did the alleged "employer" retain as much control over the individual in question as did DuraWear over Hudson in this instance. Numerous specific contractual provisions, as well as testimony regarding the daily activities of Hudson, reveal that DuraWear retained the requisite degree of control over Hudson's activities to sustain the finding of the trial court that he was not an independent contractor.
The agreement between the parties provided that Hudson could neither work for anyone other than DuraWear nor engage in other business or commercial ventures during his "employment" with the company without the latter's consent. DuraWear retained the right to alter Hudson's area of sales and his duties and to discharge him. Hudson was required to "strictly adhere" to the company's list prices for the products he sold. He was forbidden to accept cash payments from the customers. The time during which he might vacation was regulated by the company. DuraWear could have required him to purchase liability insurance for the company's protection. Also, DuraWear retained title to any "inventions, improvements, discoveries," etc., which were related to company products and made by Hudson while he was working for the company.
In addition to the preceding contractual elements of control, testimony of the parties revealed other means by which the company retained control over Hudson's company related actions. Hudson, himself, testified that he reported to his area supervisor, Bean, on a weekly basis. Hudson had to meet his sales quota, which was established by DuraWear's national sales manager. Moreover, Hudson was required to submit detailed weekly activity reports to Bean, who occasionally traveled with Hudson.
Likewise, the company withheld federal income taxes and made social security payments on behalf of Hudson.
Caine, DuraWear's president, also testified that on more than one occasion, he had specifically directed Hudson to call on a given customer.
The above evidence shows that DuraWear retained control over what, in the language of the court in Dickert, supra, was to be done and how it was to be done. A *Page 186 
given dollar volume in sales, i.e., Hudson's sales quota, which was established by DuraWear's national sales manager, constituted what was to be accomplished. A certain degree of leeway was permitted Hudson in achieving this objective; however, the company retained a significant amount of control over his activities. Hudson was required to abide by the company's price list. He was given customer cards by the company to aid him in contacting prospective buyers. While he did plan his daily activities, these were subject to weekly review by his supervisor. Moreover, his supervisor occasionally traveled with him. Caine had directed Hudson on more than one occasion to call on a specific customer.
 "[I]t is not possible to lay down a hard and fast rule or state definite facts by which the status of men working and contracting together can be definitely defined in all cases as employee or independent contractor. Each case must depend upon its own peculiar facts." (Moore-Handley Hardware Co. v. Williams, 238 Ala. 189, 195, 189 So. 757, 762
(1939)).
Accord Dortch, supra; Birmingham Post Co. v. Sturgeon, 227 Ala. 162,149 So. 74 (1933).
The findings of fact of the trial court sitting without a jury are entitled to the same weight as a jury verdict. Walkerv. Roe, 295 Ala. 79, 323 So.2d 349 (1975); Blue Cross-BlueShield of Alabama v. Thornton, 56 Ala. App. 678, 325 So.2d 187
(1975). Circumstances similar to those herein have been held sufficient to warrant submission to a jury for the determination of whether an individual was an employee or an independent contractor. Moore-Handley, supra. Furthermore, less evidence than contained herein has been held to constitute a jury question for a determination of the individual contractor-employee issue. Luquire Ins. Co. v. McCalla,244 Ala. 479, 13 So.2d 865 (1943); Tuscaloosa Veneer Co. v. Martin,233 Ala. 567, 172 So. 608 (1937). In this instance, we cannot say that the finding of the trial court that Hudson was not an independent contractor was clearly erroneous, thereby warranting reversal.
Hudson, in an excellent brief, also correctly states that the evidence fails to demonstrate that DuraWear "exercised such control over Hudson to the extent that it controlled all the details of the work performed by Hudson." DuraWear need not have actually exercised control over all of Hudson's activities in order for him to be considered an employee of the company.
 "It is not the fact of actual interference, but the right to control, that makes the difference between an independent contractor and a servant or agent. . . ." (Philabert v. Frazier, 35 Ala. App. 549, 551, 51 So.2d 381, 383 (1950))
We need not at this point recount each element of control DuraWear retained over Hudson. Suffice it to say that the company retained sufficient right of control over his activities to have enabled it to specifically direct his activities.
Hudson also contends that the trial court erred to reversal by not requiring Caine to answer questions regarding DuraWear's suppliers of ceramic and plastic materials. He states that Rule 26 (b)(1), ARCP, permits discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action." [Emphasis supplied.] Given Hudson's testimony to the effect that the products he sold subsequent to leaving DuraWear were "basically" similar in content and use to those he sold while at DuraWear, we fail to perceive the relevance of the answers to the challenged questions. DuraWear's complaint alleged Hudson had engaged in a "business similar" to that of the company. Hudson's above testimony established the fact that he was selling the same type of products, or engaging in the type of business activity, prohibited by the agreement. Hence, who supplied DuraWear's products was irrelevant to the proceeding in the trial court, as that information, in all likelihood, would only have established the nature of the type product sold by DuraWear.
Moreover, even if the information was relevant, the refusal of the trial court to compel disclosure would not require *Page 187 
reversal. The lower court's ruling would fall within Rule 61, ARCP, "Harmless Error."
 "No error in either the admission or the exclusion of evidence . . . is ground for granting a new trial or for setting aside a verdict . . . unless refusal to take such action appears to the court inconsistent with substantial justice. . . ."
Given the nature of DuraWear's complaint, to wit, general business "pirating," we cannot say that refusal to compel specific disclosure of supply sources in this instance was "inconsistent with substantial justice."
Hudson, in reliance on Premier Industrial Corporation v.Marlow, 292 Ala. 407, 295 So.2d 396 (1974), also contends the trial court erred by overruling his motion to dismiss DuraWear's complaint for failure to specifically allege the requisite control over Hudson to show the latter was a DuraWear employee. We find no error to reversal in this contention.Premier, supra, was not decided pursuant to the Alabama Rules of Civil Procedure. The latter provide only that the pleading set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 (a), ARCP. The Committee Comments to this rule state:
 "The intent and effect of the rules is to permit the claim to be stated in general terms. The rules are designed to discourage battles over mere form of statement which often delay trial on the merits or prevent a party from having a trial because of mistakes in statement."
DuraWear's complaint was not defective under the pleading standards established by the Alabama Rules of Civil Procedure. We also point out that DuraWear incorporated the contractual agreement between the parties into its complaint.
We note that DuraWear, in brief, seeks to have this court hold that the injunctive relief should be in force and effect for two years as opposed to the one year as ordered by the trial judge. We initially note that no appeal was taken from the trial court's order by DuraWear.
The "issue" of the one year injunction is not stated to be an issue by either appellant or appellee. The matter is raised for the first time in the concluding paragraph of appellee's brief where he states:
 "It is noted, however, that the trial court enjoined the defendant from competing for only one (1) year from January 27, 1976 (the date of defendant's termination). Also, the injunctive relief only applied to sales made to plaintiff's customers within the territory set forth in the employment contract rather than the territory itself. . . . To allow the injunctive relief to end January 27, 1977, would be unjust considering the fact that Mr. Hudson has been in continuous violation of his employment agreement from the date of his employment termination."
As noted earlier, DuraWear, the appellee, has taken no cross appeal, and we do not find the manner in which it has sought to raise the issue in this instance to be sufficient for our review. See 2A Ala. Digest Appeal Error 747 (2), ARAP 4 (a)(2).
The decree of the trial court is to be affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.