John Lilya appeals the Mobile Circuit Court's summary judgment in favor of The Greater Gulf State Fair, Inc. ("Gulf State Fair"), on Lilya's tort and contract claims stemming from his fall off of a mechanical bull operated by a lessee on the premises of Gulf State Fair. We affirm.
 "When reviewing a ruling on a motion for a summary judgment, this Court applies the same standard that the trial court used `in determining whether the evidence before the court made out a genuine issue of material fact.' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988). When a party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). `Substantial evidence' is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). In reviewing a ruling on a motion for a summary judgment, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Renfro v. Georgia Power Co., 604 So.2d 408, 411 (Ala. 1992)."
City of Orange Beach v. Duggan, 788 So.2d 146, 149 (Ala. 2000).
Viewed in the light most favorable to Lilya, the relevant facts of this case, most of which are undisputed, are as follows. While attending a fair on premises owned by Gulf State Fair in Mobile County, John Lilya came upon a mechanical bull ride owned and operated by Tracy Torres, who was doing business as "Rolling Thunder Company." As Lilya approached the ride, which was enclosed in a small corral fence and was surrounded by a crowd of people, he could see a person riding the mechanical bull. Above the mechanical bull was a large banner that read "Rolling Thunder." As a friend of Lilya's walked up to a table located on one side of the corral area to pay for a ride on the mechanical bull, Lilya noticed that the rider who had been on the mechanical bull had fallen off. After Lilya's friend paid for his ride on the bull and walked into the corral, Lilya decided that he would also try to ride the mechanical bull.
After Lilya approached the table and paid the $5 admission fee to Torres, who was operating the mechanical bull, Lilya noticed that his friend had fallen off the bull. Torres told Lilya that Lilya had to sign a document before he would be allowed to ride the mechanical bull. That document provided, in pertinent part:
 "PARTICIPANT AGREEMENT, RELEASE, AND ACKNOWLEDGMENT OF RISK
 "In consideration of the services of Rolling Thunder 
Company, their agents, owners, officers, volunteers, participants, employees, and all other persons or entities acting in any capacity on their behalf (hereinafter collectively referred to as `RTC'), I hereby agree to release, indemnify, and discharge RTC, on behalf of myself, my children, my parents, my heirs, assigns, personal representative and estate as follows: *Page 1052 
 "1. I acknowledge that riding a mechanical bull entails known and unanticipated risks which could result in physical or emotional injury, paralysis, death, or damage to myself, to property, or to third parties. I understand that such risks simply cannot be eliminated without jeopardizing the essential qualities of the activity.
 "The risks include, among other things: falling off or being thrown from the bull which could result in musculoskeletal injuries including head, neck, and back injuries.
 "Furthermore, RTC employees have difficult jobs to perform. They seek safety, but they are not infallible. They might be unaware of a participant's fitness or abilities. They may give inadequate warnings or instructions, and the equipment being used might malfunction.
 "2. I expressly agree and promise to accept and assume all of the risks existing in this activity. My participation in this activity is purely voluntary, and I elect to participate in spite of the risks.
 "3. I hereby voluntarily release, forever discharge, and agree to indemnify and hold harmless RTC from any and all claims, demands, or causes of action, which are in any way connected with my participation in this activity or my use of RTC's equipment or facilities, including any such claims which allege negligent acts or omissions of RTC.
 "4. Should RTC, or anyone acting on [its] behalf, be required to incur attorney's fees and costs to enforce this agreement, I agree to indemnify and hold them harmless for all such fees and costs.
 "5. I certify that I have adequate insurance to cover any injury or damage I may cause or suffer while participating, or else I agree to bear the costs of such injury or damage myself. I further certify that I have no medical or physical conditions which could interfere with my safety in this activity, or else I am willing to assume — and bear the costs of — all risks that may be created, directly or indirectly, by any such condition.
 "6. In the event that I file a lawsuit against RTC, I agree to do so solely in the state of Texas, and I further agree that the substantive law of that state shall apply in that action without regard to the conflict of law rules of that state. I agree that if any portion of this agreement is found to be void or unenforceable, the remaining portions shall remain in full force and effect.
 "By signing this document, I acknowledge that if anyone is hurt or property is damaged during my participation in this activity, I may be found by a court of law to have waived my right to maintain a lawsuit against RTC on the basis of any claim from which I have released them herein.
 "I have had sufficient opportunity to read this entire document. I have read and understood it, and I agree to be bound by its terms.
 "Signature of Participant: /s/John Lilya
Print Name: John Lilya
 "Address: Mobile, AL
"Phone:____________ Date:_______________"
(Emphasis in original.)
After signing the document, Lilya stepped into the corral area, the floor of which was covered with a mat approximately 12 to 18 inches thick, which Lilya described as "soft and forgiving." Lilya's impression of the mat was that if he fell *Page 1053 
from the bull the mat would protect him from injury.
With Torres's help, Lilya got up on the mechanical bull and began to ride. However, after just a few seconds, and while the bull was still moving slowly, Lilya fell off. Torres then instructed Lilya on how to ride the bull and helped Lilya back onto the bull. The bull ride began again, and it became progressively faster, spinning and bucking to the left and to the right, until Lilya again fell off of the bull. Lilya claims that it was this second fall that caused his injury; he landed on his head and shoulders and suffered a fractured neck.
Lilya brought this action against, among others, Gulf State Fair, asserting 1) that Gulf State Fair negligently and/or wantonly operated its place of entertainment in that it breached its duty to keep and maintain the fairgrounds in a reasonably safe condition, and 2) that Gulf State Fair breached an implied-in-fact contract with Lilya to provide reasonably safe exhibits for Lilya's entertainment. Gulf State Fair filed a motion for a summary judgment, which the trial court granted. Following certification of the summary judgment as a final judgment under Ala.R.Civ.P. 54(b), Lilya filed this appeal.
 I. Negligence/Wantonness
The parties dispute the nature of the claim involved and, accordingly, whether the duty owed to Lilya by Gulf State Fair should be extracted from general principles of negligence or of premises liability. The key to this question is whether the injury was caused by some affirmative conduct of the landowner or by a condition of the premises. Baldwin v.Gartman, 604 So.2d 347 (Ala. 1992).
In Baldwin, we held that an injury to a landowner's friend, Baldwin, caused by a concrete slab that fell on Baldwin's leg after it was left upright on a dolly by the landowner, Gartman, was caused by a condition of the premises and was to be evaluated under premises-liability principles:
 "Baldwin argues that Gartman's duty toward Baldwin is governed not by the standards of premises liability, but rather by traditional negligence standards. This Court recognized in Orr v. Turney, 535 So.2d 150
(Ala. 1988), that negligence principles are applicable when the landowner's active conduct, rather than the condition of the land, causes the injury:
 "`Historically, landowners have enjoyed isolation from traditional negligence standards relative to their ownership or possession of land. Instead, graduated classes, each to whom a separate duty was owed, based upon their relationship to the landowner, became determinative of the landowner's liability. . . .
"`. . . .
 "`This special classification privilege is not generally regarded as applicable, however, when it is the affirmative conduct of the landowner, rather than the condition of his premises, that causes the injury. In this context, the justifications for determining liability based upon the classification of the injured party . . . do not attach. Where the injury is caused by some distinct act of the landowner, rather than by the mere condition of the premises, a different standard for determining liability may arise.
"`. . . .
 "`. . . We reaffirm today the rule set out in W.S. Fowler Rental Equip. Co. v. Skipper, [276 Ala. 593, 165 So.2d 375 (1963)]. A landowner, if he undertakes any affirmative conduct creating a danger to an unwitting licensee, independent and distinct from *Page 1054 
the condition of the premises, must give reasonable notice or warning of the danger or exercise reasonable or ordinary care to safeguard against the danger.'
 "535 So.2d at 151-54. In Orr the landowner injured a licensee when, while running with a pan of burning grease, she spilled some on the licensee. That conduct had nothing to do with the condition of the premises. Rather, the injury came from an affirmative act.
 "The dangerous condition caused by the precarious position of the slab on the dolly is not `independent and distinct from the condition of the premises.' Gartman left the slab unattended, it was bumped by his son Steven, and it fell on Baldwin. The balanced slab was a condition of the premises, no matter how briefly it was balanced. Baldwin contends that Gartman's negligent affirmative conduct, qualifying for the Orr
exception to premises liability standards, was in leaving the balanced slab on the dolly unattended. In Orr the defendant's conduct was the immediate cause of the injury. Gartman's leaving the slab unattended did not, in and of itself, cause the injury; rather, it produced a dangerous condition. Had Gartman, rather than his son, bumped the slab and caused it to fall, his conduct, distinct from his status as landowner, could then be said to have caused the injury and could be evaluated by an ordinary negligence standard."
Baldwin, 604 So.2d at 348-49 (footnote omitted).
Just as it was the "dangerous condition" created by the unbalanced slab and not Gartman's act of leaving the slab unattended that caused the injury in Baldwin, it is clear here that, if anything, it was the allegedly dangerous condition created by the inherent risks of the mechanical bull ride itself — not Gulf State Fair's conduct in allowing Torres to lease space and to operate the mechanical bull ride — that directly caused Lilya's injury. Therefore, any tort claim Lilya would maintain against Gulf State Fair would be governed by premises-liability principles and would be evaluated in light of the duty owed by a landowner to an invitee.[1]
As the landowner, Gulf State Fair would owe Lilya, its invitee, the duty to use reasonable care described in Tice v. Tice, 361 So.2d 1051,1052 (Ala. 1978):
 "[T]he duty owed to [an invitee] by the [premises owner] is the exercise of ordinary and reasonable care to keep the premises in a reasonably safe condition. Winn-Dixie v. Godwin, 349 So.2d 37 (Ala. 1977); May-Bilt, Inc. v. Deese, 281 Ala. 579, 206 So.2d 590
(1967). The owner of a premises in such cases is not an insurer of the safety of his invitees, and the principle of res ipsa loquitur is not applicable. There is no presumption of negligence which arises from the mere fact of an injury to an invitee. Delchamps, Inc. v. Stewart, 47 Ala. App. 406, 255 So.2d 586 (1971); cert. denied 287 Ala. 729, 255 So.2d 592 (1971); Great Atlantic Pacific Tea Co. v. Bennett, 267 Ala. 538, 103 So.2d 177 (1958). Furthermore, the owner of premises has no duty to warn an invitee of open and *Page 1055 
obvious defects in the premises which the invitee is aware of or should be aware of in the exercise of reasonable care. Hand v. Butts, 289 Ala. 653, 270 So.2d 789 (1972); Crawford Johnson Co. v. Duffner, 279 Ala. 678, 189 So.2d 474 (1966)."
If there is a dangerous condition on the premises that is not "open and obvious," the premises owner has a duty "to give sufficient warning so that, by the use of ordinary care, the danger can be avoided." Armstrongv. Georgia Marble Co., 575 So.2d 1051, 1053 (Ala. 1991).
Here, the only evidence of danger stemming from the mechanical bull ride is the most open and obvious characteristic of the ride: the possibility of falling off the mechanical bull. Lilya was aware that the two riders who had ridden the mechanical bull immediately before he rode it had fallen off. He noticed the thick floor mat, and he knew that the mat was there to protect riders when they fell. Also, he signed a release that explicitly stated, among other things, 1) that riding the mechanical bull involved inherent risks, 2) that injury was a possibility, 3) that the risks included "falling off or being thrown from the bull which could result in musculoskeletal injuries including head, neck, and back injuries," and 4) that Lilya understood the risks and rode voluntarily.
Additionally, the very name of the ride — "Rolling Thunder" — hanging on a banner above the ride, gives a somewhat graphic indication of what is the very nature of bull riding: an extremely turbulent ride the challenge of which is to hang on and not fall off. The entertainment value — and, indeed, the concept — of bull riding becomes meaningless without the inherent possibility of falling off, an observation that parallels one Chief Justice Cardozo found compelling in Murphy v. Steeplechase Amusement Co., 250 N.Y. 479,480-83, 166 N.E. 173, 173-74 (1929), a similar case involving an injury to a rider on an attraction at an amusement park at Coney Island in New York:
 "One of the supposed attractions is known as `The Flopper.' It is a moving belt, running upward on an inclined plane, on which passengers sit or stand. Many of them are unable to keep their feet because of the movement of the belt, and are thrown backward or aside. The belt runs in a groove, with padded walls on either side to a height of four feet, and with padded flooring beyond the walls at the same angle as the belt. An electric motor, driven by current furnished by the Brooklyn Edison Company, supplies the needed power.
 "Plaintiff, a vigorous young man, visited the park with friends. One of them, a young woman, now his wife, stepped upon the moving belt. Plaintiff followed and stepped behind her. As he did so, he felt what he describes as a sudden jerk, and was thrown to the floor. His wife in front and also friends behind him were thrown at the same time. Something more was here, as every one understood, than the slowly moving escalator that is common [in] shops and public places. A fall was foreseen as one of the risks of the adventure. There would have been no point to the whole thing, no adventure about it, if the risk had not been there. The very name above the gate, `the Flopper,' was warning to the timid. If the name was not enough, there was warning more distinct in the experience of others. We are told by the plaintiff's wife that the members of her party stood looking at the sport before joining in it themselves. Some aboard the belt were able, as she viewed them, to sit down with decorum or even to stand and keep their footing; others jumped or fell. The tumbling bodies *Page 1056 
and the screams and laughter supplied the merriment and fun. `I took a chance,' she said when asked whether she thought that a fall might be expected.
". . . .
 "Volenti non fit injuria.[2] One who takes part in such a sport accepts the dangers that inhere in it so far as they are obvious and necessary, just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball. The antics of the clown are not the paces of the cloistered cleric. The rough and boisterous joke, the horseplay of the crowd, evokes its own guffaws, but they are not the pleasures of tranquility. The plaintiff was not seeking a retreat for meditation. Visitors were tumbling about the belt to the merriment of onlookers when he made his choice to join them. He took the chance of a like fate, with whatever damage to his body might ensue from such a fall. The timorous may stay at home."
(Citations omitted.)
We hold that the possibility of falling off the mechanical bull and, accordingly, the possibility of being injured as a result of falling off the mechanical bull were open and obvious dangers. Therefore, Gulf State Fair owed no duty to warn Lilya of the possible harm involved in riding the mechanical bull. Without the existence of a duty, Lilya's negligence and wantonness claims fail as a matter of law, and the trial court's summary judgment as to those claims was appropriate. Flagstar Enters.,Inc. v. Davis, 709 So.2d 1132, 1139 (Ala. 1997) (noting that one of the "essential elements to a right of recovery for negligence [is a] a duty owing from the defendant to the plaintiff"); Hobart Corp. v. Scoggins,776 So.2d 56, 58 (Ala. 2000) ("Wantonness involves the `conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.'") (quoting Alfa Mut. Ins.Co. v. Roush, 723 So.2d 1250, 1256 (Ala. 1998)) (emphasis omitted).
 II. Implied Contract
Lilya also alleges that Gulf State Fair violated a duty it owed Lilya under an implied-in-fact contract. When a person purchases admission to a place of amusement, such as the fair that Lilya attended, an implied contract is created pursuant to which the seller "undertakes that the premises are reasonably safe for the purpose intended, and for which they are accordingly used by his patrons." Birmingham Amusement Co. v.Norris, 216 Ala. 138, 141, 112 So. 633, 635 (1927); see also Sims v.Etowah County Bd. of Educ., 337 So.2d 1310, 1314 (Ala. 1976) (stating that "a ticket to a place of public entertainment constitutes a contract between the proprietor and the purchaser of the ticket; whatever contractual duties grow out of that relation, it has been held, must be performed by the proprietor or he must respond in damages for breach of contract").
 "This does not mean that the proprietor is an insurer against accidents to patrons resulting from their own missteps or disabilities, and not primarily from the unsafe condition of the premises or their appurtenances, nor against injuries resulting from invisible defects therein, not open to observation, nor discoverable by ordinary inspection. *Page 1057 
This is the sound doctrine declared in Scott v. Univ. of Mich. Athletic Ass'n, 152 Mich. 684, 116 N.W. 624, 17 L.R.A.(N.S.) 234, 125 Am. St. Rep. 423, 15 Ann. Cas. 515 [(1908)]. . . . But, where the causating defect was open to observation, or discoverable by ordinary inspection, liability for the injury attaches as a matter of law. It is not sufficient in such cases to say that the proprietor must make reasonable inspections, or exercise due care to discover, since his duty is to discover and to know."
Norris, 216 Ala. at 141, 112 So. at 635.
Here, there simply is no substantial evidence of a "causating defect." Lilya appears to be contending that a mechanical bull is unreasonably dangerous as a matter of law, a contention with which we cannot agree. There is no evidence indicating that the mechanical bull did not work exactly as it was supposed to work; therefore, there was no "defect" that Gulf State Fair should have discovered through inspection. In the words of Norris, there is no substantial evidence indicating that the mechanical bull ride was not "reasonably safe for the purpose intended." Therefore, because Lilya can show no breach of the implied contract between him and Gulf State Fair, the summary judgment in favor of Gulf State Fair on Lilya's contract claim was appropriate, and we affirm that judgment.
AFFIRMED.
Moore, C.J., and Lyons and Johnstone, JJ., concur.
Woodall, J., concurs in the result.
[1] Lilya contends that the duty owed by Gulf State Fair in this case is governed by Birmingham Amusement Co. v. Norris, 216 Ala. 138,112 So. 633 (1927). However, as discussed below, the Norris duty rule is applicable to claims under an implied-contract theory of recovery based on a person's purchase of a ticket to obtain entry into a place of amusement. See Sims v. Etowah County Bd. of Educ., 337 So.2d 1310, 1314
(Ala. 1976) (citing Norris).
[2] The maxim "volenti non fit injuria" means that "a person who knowingly and voluntarily risks danger cannot recover for any resulting injury." Black's Law Dictionary 1569 (7th ed. 1999).