MOORE, Judge.
Robert Powell appeals from a summary judgment entered by the Bessemer Division of the Jefferson Circuit Court (“the trial court”) in favor of Piggly Wiggly Alabama Distributing Company, Inc. (“Piggly Wiggly”). We affirm in part and reverse in part.

Procedural History

Powell filed a complaint in the trial court against Piggly Wiggly on November 8, 2006. Powell asserted that, on November 24, 2004, Piggly Wiggly had negligently and/or wantonly caused or allowed a motor vehicle to collide with Powell at Piggly Wiggly’s warehouse in Bessemer, causing injury to Powell. Powell requested, among other things, compensatory damages, special damages, and punitive damages; he also requested a trial by jury. Piggly Wiggly filed an answer on January 4, 2007.
On September 15, 2009, Piggly Wiggly filed a motion for a summary judgment. In that motion, Piggly Wiggly argued, among other things, that Powell could not recover on any premises-liability theory raised in the complaint, that Powell could not present substantial evidence of wantonness, and that Powell’s prayer for punitive damages should be stricken. Powell filed a response to Piggly Wiggly’s summary-judgment motion on October 20, 2009.
On October 21, 2009, the trial court rendered the following judgment by making the following notation on the case-action-summary sheet:
“Motion for summary judgment is argued by the parties and the Court finds that there is no genuine issue as to any material facts and [Piggly Wiggly] is entitled to a judgment as a matter of law. There is no just reason for delay in making this a final order due to [these] being the only parties and this the only issue. Costs taxed as paid.”
Like the parties, we construe that judgment as granting all the relief requested by Piggly Wiggly, including striking the *923 prayer for punitive damages. The trial court entered its judgment in the State Judicial Information System on November 23, 2009. See Rule 58(c), Ala. R. Civ. P. Powell filed his notice of appeal to this court on December 9, 2009.

Facts

According to Powell’s deposition testimony, on November 24, 2004, he accompanied a friend, Derrick Jones, an employee of Piggly Wiggly, to the building where Jones worked in order to pick up Jones’s paycheck. To obtain access to the Piggly Wiggly building, Jones, but not Powell, signed in at a guard station at the entrance to the parking lot of the building. Once parked, Jones proceeded inside while Powell initially waited in Jones’s automobile. Powell quickly changed his mind and decided to accompany Jones inside the building. Enough time lapsed, however, that, by the time Powell entered the building, Jones was out of his sight.
Powell testified that, not knowing which direction to go, he followed a group of men, eventually ending up in the warehouse part of the building. Powell stopped at a “little yellow line,” which Powell surmised was intended to regulate visitor traffic. Powell observed pallet jacks or forklifts operating on the warehouse floor some distance from him, as well as men loading trucks. At that point, Powell realized he was in the wrong part of the building. Powell testified that he heard Jones call him from behind, he turned to his left, and, at that moment, a pallet jack “came out of nowhere.” The forks of the pallet jack, which was being operated by an employee of Piggly Wiggly, Austin Tubbs, struck and trapped Powell’s right foot.[1] Powell testified that Tubbs immediately jumped off the forklift, ran over to Powell, and apologized, stating he had not seen Powell.
David Bullard, the director of human resources at Piggly Wiggly, testified in his deposition that its employees could, and did, bring visitors with them when picking up their paychecks. Bullard did not recall anyone ever taking a visitor into the warehouse area, but he admitted that Piggly Wiggly did not post any signs or take any other precautions to restrict visitors from accessing the warehouse area while on the premises. Bullard stated that Powell had been injured in the returns area of the warehouse, an area in which five or six employees, including Tubbs, routinely operated pallet jacks to unload trailers. Bul-lard did not recall any yellow line marking the floor in the returns area. Bullard testified that Tubbs had been properly trained on the safe operation of the pallet jack and had not violated any Piggly Wiggly policies while operating the pallet jack that struck Powell. Bullard stated that the accident occurred in an area where visitors would not be expected and that Powell’s presence did not benefit Piggly Wiggly in any way. Norman Decker, a warehouse supervisor for Piggly Wiggly, who concurred with Bullard’s testimony in many respects, testified that no other visitor had entered the returns area before.

Standard of Review

“A party is entitled to a summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Rule 56(c), Ala. R. Civ. P. ‘Our standard of review in cases involving summary judgments is de novo.’ Lee v. Burdette, 715 So.2d 804, 806 (Ala.Civ.App.1998). ‘In reviewing the disposition of a motion for [a] summary judgment, we utilize the same standard as that of *924 the trial court in determining whether the evidence before the court made out a genuine issue of material fact’ and whether the movant ‘is entitled to a judgment as a matter of law.’ Bussey v. John Deere Co., 581 So.2d 860, 862 (Ala.1988); Rule 56(c)(3), Ala. R. Civ. P. ‘[I]f the moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden ... shifts to the non-movant; ... the non-movant must show “substantial evidence” in support of his position.’ Bass v. SouthTrust Bank, 538 So.2d 794, 798 (Ala.1989). Evidence is ‘substantial’ if it is ‘of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala.1989). Our review is further subject to the caveat that this court must review the record in a light that is most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).”
Prince v. Wal-Mart Stores, Inc., 804 So.2d 1102, 1103-04 (Ala.Civ.App.2001).

Discussion

Powell argues on appeal that the trial court erred in entering a summary judgment in favor of Piggly Wiggly because, he says, Piggly Wiggly failed to make a prima facie showing that no genuine issue of material fact exists. Citing Lilya v. Greater Gulf State Fair, Inc., 855 So.2d 1049 (Ala.2003), and Orr v. Turney, 535 So.2d 150 (Ala.1988), Powell asserts that general negligence principles, rather than those applicable to premises liability, on which Piggly Wiggly’s summary-judgment motion was based, are applicable in this case because, he says, the negligence count asserted in his complaint was based on Tubbs’s active conduct as an employee of Piggly Wiggly rather than on a condition of the land.
In Lilya, like in the present case, the parties disputed “the nature of the claim involved and, accordingly, whether the duty owed ... should be extracted from general principles of negligence or of premises liability.” 855 So.2d at 1053. The Alabama Supreme Court then outlined the applicable law regarding that issue:
“The key to this question is whether the injury was caused by some affirmative conduct of the landowner or by a condition of the premises. Baldwin v. Gartman, 604 So.2d 347, 349 (Ala.1992).
“In Baldwin, we held that an injury to a landowner’s friend, Baldwin, caused by a concrete slab that fell on Baldwin’s leg after it was left upright on a dolly by the landowner, Gartman, was caused by a condition of the premises and was to be evaluated under premises-liability principles:
“ ‘Baldwin argues that Gartmaris duty toward Baldwin is governed not by the standards of premises liability, but rather by traditional negligence standards. This Court recognized in Orr v. Turney, 535 So.2d 150 (Ala.1988), that negligence principles are applicable when the landowner’s active conduct, rather than the condition of the land, causes the injury:
“ ‘ “Historically, landowners have enjoyed isolation from traditional negligence standards relative to their ownership or possession of land. Instead, graduated classes, each to whom a separate duty was owed, based upon their relationship to the landowner, became determinative of the landowner’s liability....
[[Image here]]
“ ‘ “This special classification privilege is not generally regarded *925 as applicable, however, when it is the affirmative conduct of the landowner, rather than the condition of his premises, that causes the injury. In this context, the justifications for determining liability based upon the classification of the injured party ... do not attach. Where the injury is caused by some distinct act of the landowner, rather than by the mere condition of the premises, a different standard for determining liability may arise.
[[Image here]]
. We reaffirm today the rule set out in W.S. Fowler Rental Equip. Co. v. Skipper, [276 Ala. 593, 165 So.2d 375 (1963) ]. A landowner, if he undertakes any affirmative conduct creating a danger to an unwitting licensee, independent and distinct from the condition of the premises, must give reasonable notice or warning of the danger or exercise reasonable or ordinary care to safeguard against the danger.”
“‘535 So.2d at 151-54. In Orr the landowner injured a licensee when, while running with a pan of burning grease, she spilled some on the licensee. That conduct had nothing to do with the condition of the premises. Rather, the injury came from an affirmative act.
“‘The dangerous condition caused by the precarious position of the slab on the dolly is not “independent and distinct from the condition of the premises.” Gartman left the slab unattended, it was bumped by his son Steven, and it fell on Baldwin. The balanced slab was a condition of the premises, no matter how briefly it was balanced. Baldwin contends that Gartman’s negligent affirmative conduct, qualifying for the Orr exception to premises liability standards, was in leaving the balanced slab on the dolly unattended. In Orr the defendant’s conduct was the immediate cause of the injury. Gartman’s leaving the slab unattended did not, in and of itself, cause the injury; rather, it produced a dangerous condition. Had Gartman, rather than his son, bumped the slab and caused it to fall, his conduct, distinct from his status as landowner, could then be said to have caused the injury and could be evaluated by an ordinary negligence standard.’
“Baldwin, 604 So.2d at 348-49 (footnote omitted).”
Lilya, 855 So.2d at 1053-54.
In Lilya, Lilya was injured when he fell off a mechanical bull ride operated by a lessee on premises owned by The Greater Gulf State Fair. 855 So.2d at 1051-52. The Alabama Supreme Court determined that, like in Baldwin, the dangerous condition created by the bull ride itself, and not Gulf State Fair’s conduct in allowing the lessee to operate the bull ride, directly caused Lilya’s injury, and, thus, the claim was governed by principles of premises liability rather than by general negligence principles. Id. at 1054.
We agree with Powell that the circumstances of this case are more similar to those in Orr than to those in Baldwin or Lilya. In this case, it was the alleged negligent actions of Tubbs in operating the forklift that ultimately caused Powell’s injury, rather than any dangerous condition existing within the warehouse. Compare Shelley v. White, [Case No. 1:09cv-662-WHA, May 5, 2010] — F.Supp.2d - (M.D.Ala.2010) (where driver of a delivery truck pulled away from loading dock as plaintiff, who had entered trailer of truck, was attempting to move boxes from trailer of truck to loading dock, and the plaintiffs injury was caused by driver’s movement of the truck, not by a condition of the truck *926 itself, duty comes from traditional principles of negligence, not premises liability). We conclude, therefore, that, like in Shelley, Piggly Wiggly’s duty comes from traditional negligence principles, rather than principles of premises liability.
Piggly Wiggly argues on appeal that, even if general negligence principles apply, summary judgment was still proper because Powell was not a foreseeable plaintiff and because the danger was open and obvious. With regard to Piggly Wiggly’s argument that Powell was not a foreseeable plaintiff, we note that Piggly Wiggly relied on principles of premises liability in its summary-judgment motion and it did not argue that Powell was not a foreseeable plaintiff for negligence purposes. Thus, Piggly Wiggly failed to make a pri-ma facie showing that no genuine issue of material fact existed as to whether it owed a duty to Powell under general negligence principles, and, therefore, the burden never shifted to Powell to present substantial evidence that he was, in fact, a foreseeable plaintiff.
Piggly Wiggly further argues that summary judgment was proper based on its assertion that the danger to Powell was open and obvious.
“ A condition is “open and obvious” when it is “known to the [plaintiff] or should have been observed by the [plaintiff] in the exercise of reasonable care.” Quillen v. Quillen, 388 So.2d 985, 989 (Ala.1980). “The entire basis of [a store owner’s] liability rests upon [its] superi- or knowledge of the danger which causes the [customer’s] injuries. Therefore, if that superior knowledge is lacking, as when the danger is obvious, the [store owner] cannot be held liable.” Id. (citation omitted).’ ”
Horne v. Gregerson's Foods, Inc., 849 So.2d 173, 176 (Ala.Civ.App.2002) (quoting Denmark v. Mercantile Stores Co., 844 So.2d 1189, 1194 (Ala.2002)). As the foregoing excerpt shows, the “open and obvious defect” defense applies to premises-liability claims. Although some cases apply similar analysis in failure-to-warn or products-liability cases, see Abney v. Crosman Corp., 919 So.2d 289 (Ala.2005); and Griffin v. Summit Specialties, Inc., 622 So.2d 1299 (Ala.1993), the defense has not been extended to negligence actions based on affirmative conduct committed by the alleged tortfeasor. Moreover, even if the defense could be applied in this type case, we note that Powell testified that the pallet jack that struck him “came out of nowhere.” Based on that testimony, we are not prepared to hold that Powell’s observance of other pallet jacks operating at a distance beyond the yellow line described by Powell would have made the existence of the pallet jack operated by Tubbs open and obvious as a matter of law. See Ford v. Bynum Livestock & Comm’n Co., 674 So.2d 600, 603 (Ala.Civ.App.1995) (holding that the openness and obviousness of a defect ordinarily is a question for the jury). Therefore, we reverse the summary judgment entered in favor of Piggly Wiggly as to the negligence claim.
We, however, affirm the summary judgment as to the wantonness claim filed by Powell. In Ex parte General Motors Corp., 769 So.2d 903, 909 (Ala.1999) (quoting Berner v. Caldwell, 543 So.2d 686, 691 (Ala.1989) (Houston, J., concurring specially)), our supreme court held that “ ‘[i]f the burden of proof at trial is on the nonmov-ant, the movant may satisfy the Rule 56[, Ala. R. Civ. P.,] burden of production ... by demonstrating to the trial court that the nonmovant’s evidence is insufficient to establish an essential element of the non-movant’s claim....’” Piggly Wiggly asserted in its summary-judgment motion that Powell could not present evidence indicating that Piggly Wiggly knew that injury would likely or probably result to Powell. In response, Powell filed testimonial evidence indicating that Tubbs had *927 struck him accidentally because he did not see Powell. That evidence does not show the requisite state of mind to sustain a wantonness claim. See Ex parte Essary, 992 So.2d 5, 12 (Ala.2007) (equating wantonness to “reckless indifference to a known danger likely to inflict injury”). Hence, the trial court did not err in entering a summary judgment in favor of Piggly Wiggly as to the wantonness claim. Because the wantonness claim constitutes the sole basis for Powell’s request for punitive damages, see Ala.Code 1975, § 6 — 11—20(a) (providing that punitive damages may only be awarded in tort actions based upon clear and convincing evidence indicating that the defendant “consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff’), the trial court acted properly in granting the motion to strike the prayer for punitive damages.

Conclusion

Based on the above-stated reasoning, we reverse the summary judgment in favor of Piggly Wiggly as to the negligence claim, we affirm the summary judgment as to the wantonness claim, we affirm the summary judgment insofar as it struck the prayer for punitive damages, and we remand the cause for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ„ concur.

. It is undisputed that the pallet jack involved in this incident has a cockpit with 8-foot forks behind it and weighs approximately 1,500 pounds.